PHILO W. STACY

*v.*

THE GLEN ELLYN HOTEL AND SPRINGS COMPANY.

*Opinion filed October 23, 1906—Petition stricken Dec. 6, 1906.*

1. DEDICATION—*what essential to constitute a common law dedication.* To constitute a dedication at common law it is essential that there be clear and unequivocal proof of an intention on the part of the proprietor of the land to dedicate the same to public use and an acceptance thereof by the public, and mere non-assertion of right by a proprietor does not establish a dedication unless the circumstances show a purpose to donate the use to the public.

2. CORPORATIONS—*when dedication is ultra vires a corporation.* A corporation organized to build and operate a summer hotel plant and develop mineral springs has no power to engage in the sale of lots, and its directors cannot bind the corporation by a certificate, issued after the sale of a lot, purporting to dedicate to the purchaser the privileges of the grounds and lake and the free use of the water from the springs for drinking and table use, even though the corporation itself derived a profit from the sale of the lot. (*Maywood Co. v. Village of Maywood,* 118 Ill. 61, distinguished.)

3. SAME—*when party is charged with notice that certificate of corporation is ultra vires.* One who has been a director of a corporation organized to build and operate a summer hotel and develop mineral springs is charged with notice of the purposes of the organization of the corporation, and also of the fact that the corporation has no power to grant certificates conferring upon purchasers of lots the privileges of the lake and grounds and free use of the spring water.

4. REHEARINGS—*a petition for rehearing must not re-argue the case.* A petition for rehearing which is a manifest attempt to re-argue the points presented in the original briefs, which points have been already considered in the opinion filed, will be stricken from the files.

WRIT OF ERROR to the Circuit Court of DuPage county; the Hon. CHARLES A. BISHOP, Judge, presiding.

Philo W. Stacy filed his bill in the circuit court of Du-Page county against the Glen Ellyn Hotel and Springs Company, a corporation, in which he alleged that on June 1, 1890, he purchased of the defendant lot 3, block 17, Glen

Ellyn addition to Prospect Park, DuPage county; that he received from the defendant a certificate entitling him to the privileges of the grounds and lake of the company and the free use of its springs for drinking and table purposes in private families only, subject to the rules and regulations of the company for the government and control of the park and springs; that this certificate and the benefit and privilege granted therein were a part of the consideration of the transfer and greatly enhanced the value of the real estate sold; that said company owned about 116 acres, containing a large lake and mineral springs, which in 1890, by resolution of its board of directors, were dedicated to public use, and since the dedication have been used by the complainant and the public; that the complainant has made improvements on his real estate and it is now worth $15,000, a large part of the value of which consists of the privileges above stated; that within the past few months defendant has threatened to enclose the park and shut out the public, in pursuance of which threat it has put up numerous signs proclaiming the grounds to be private property and warning the public to keep off· or be prosecuted as trespassers; that the defendant company has threatened to drain the lake and erect a fence around the park and springs, thus shutting off ingress and egress thereto and therefrom; that if said threats are carried out by the defendant it will result in irreparable injury and loss to the complainant and will greatly depreciate the value of his property. The prayer was for an injunction restraining defendant from doing the things which it is alleged it threatened to do, in excluding the public from said premises, and from selling, transferring, leasing, renting or encumbering the same to the detriment of the complainant and the public.

A temporary injunction was issued as prayed, and the defendant filed its answer making specific denial of the allegations in the bill, including the passage of the alleged resolution of dedication; also alleging that the issue of the

certificate was without authority from the board of directors and *ultra vires* and without consideration, and was issued with the actual and constructive knowledge of the complainant of its illegality, he being a director of said company at the time he received said certificate. It also alleged the payment of taxes since the year 1890 and the maintenance of the signs complained of since 1891; that complainant's claim under the certificate is personal and unassignable and therefore without value; that the company has been annoyed from trespassers and deemed it necessary for its own protection to fence the premises; that the complainant has no special interest and has shown no special or actual damages, and that he has a full and adequate remedy at law. The defendant filed its written motion to dissolve the temporary injunction, which motion was heard upon the bill, answer and written evidence. The injunction was dissolved and the bill dismissed for want of equity. To reverse that decree a writ of error has been prosecuted to this court.

CHARLES A. BUTLER, for plaintiff in error.

PIERSON & PEASE, for defendant in error.

Mr. JUSTICE WILKIN delivered the opinion of the court:

Many grounds for reversal are urged, but the determination of but one of them will dispose of the case. Plaintiff in error claims that the defendant corporation made a common law dedication of the property in question to the public use; that this dedication was accepted by the public, and the defendant company is estopped from denying the dedication for the reason that it has received the fruits and benefits thereof, and upon this proposition his case must stand or fall. We do not think the position is sustained by the evidence, and the decree below must therefore be affirmed regardless of all other questions raised in the argument.

In order to constitute a dedication at common law it is essential (1) that there be an intention on the part of the

proprietor of the land to dedicate the same to public use; (2) that there be an acceptance thereof by the public; and (3) that the proof of these facts be clear, satisfactory and unequivocal. The vital and controlling principle is the *animus donandi,* and whenever this is plainly and unequivocally manifested on the part of the owner of the soil, either by formal declaration or by acts from which it may fairly be presumed, such as should equitably estop him from denying such an intention, the dedication, so far as the owner is concerned, is complete. Without such manifestation of intention by either of said modes it cannot be said that a valid dedication is possible. To make a sufficient dedication the proprietor of the soil must devote the portion thereof intended for public use to such use, and on the part of the public it must be accepted and appropriated to that use. The acts on the part of the donor, and of the public, of an intention to dedicate, accept and appropriate the lands to public use, where the dedication is relied upon to support some right, must be equally clear and unambiguous. A dedication is not an act of omission to assert a right, but is the affirmative act of the donor resulting from an active, and not a passive, condition of the owner's mind on the subject. A mere non-assertion of right does not establish a dedication unless the circumstances establish a purpose or intention to donate the use to the public. (*City of Chicago* v. *Chicago, Rock Island and Pacific Railway Co.* 152 Ill. 561; *Marsh* v. *Village of Fairbury,* 163 id. 401; *Alden Coal Co.* v. *Challis,* 200 id. 222.) We think the evidence in this case falls far short of proving such essential acts, either on the part of the corporation or the public.

The evidence shows that on March 29, 1890, the Glen Ellyn Hotel and Springs Company was organized by Baker, Riford, Goodridge and others. Its object as set forth in its charter was "building and operating a summer hotel plant and developing mineral springs in DuPage county, Illinois." Immediately after its incorporation it acquired the title to

about 116 acres of land within the village of Glen Ellyn, from Riford, Goodridge and others. Upon the land so acquired was erected a summer hotel, and the corporation proceeded to develop and maintain certain mineral springs located in the vicinity. Some of the officers of the corporation also owned certain other lands surrounding those belonging to the corporation, which were held in the names of Riford and Goodridge, as trustees. These other parties were engaged in the real estate business, and they subdivided their land in May, 1890, and proceeded to sell lots to private individuals. About the time of the subdivision it is claimed by plaintiff in error, and there is some evidence in the record tending to show the fact, a resolution was passed by the board of directors of the defendant company dedicating the grounds of the corporation, and the mineral springs thereon situated, to the public use. It is claimed that this dedication was held out to the public as an inducement for the sale of the lots, and that the proceeds of the sales were used in the erection of the hotel building and the improvement of the springs. On June 21, 1890, the plaintiff in error purchased of Riford and Goodridge one of the lots in said subdivision for $3000. On May 1, 1891, a certificate was issued to him, signed by the Glen Ellyn Hotel and Springs Company, by S. L. Baker, president, and Goodridge, secretary, which stated that he had purchased a certain lot in the addition and was entitled to the privileges of the grounds and lake, the free use of the water of the springs for drinking and table purposes in private family only, subject to the rules and regulations of the springs company for the government and control of the park and springs belonging to the company. Upon the lot purchased the plaintiff in error erected certain buildings, and he now claims that the property is worth $15,000, the greater part of which value is occasioned by the privileges afforded him under the certificate issued by the corporation.

We think the evidence wholly fails to sustain the contention that the premises were dedicated to the public use. While it is true there are certain affidavits in the record tending to show such dedication, yet these affidavits are in irreconcilable conflict with the subsequent use of the property by the defendant in error. The books of the company offered in evidence wholly fail to show any such dedication, and the only evidence in support thereof is the recollection of certain persons who were officers of the company and claim to have been present at the time the resolution was passed. Subsequent to the alleged dedication the property continued to be used by the corporation for the purposes for which it was organized. It retained possession of the grounds and buildings, exercising absolute dominion and control over them. It rented the premises at various times for several months to parties who desired to use them, and signs were erected on the premises warning the public against trespassing thereon. The public authorities regularly assessed and collected from the defendant corporation the usual and customary taxes levied and collected against the property of private individuals. There is an entire absence in the record of any evidence tending to show that the village of Glen Ellyn ever exercised any acts of ownership or control thereover or ever claimed to be the owner of the property or in any way interested therein. The evidence of the dedication and acceptance by the public is not of that clear and unequivocal character necessary to constitute a common law dedication.

Again, even though the evidence had shown a dedication by the directors of the corporation, we do not think they were vested by the charter with authority to make such a dedication. The object for which the corporation was organized, as stated in the charter, was to build and operate a summer hotel plant and develop the mineral springs. In order to accomplish the purpose of the organization it was not necessary for it to engage in the real estate business or

to subdivide property or sell lots. In the accomplishment of its business it was doubtless authorized to own certain real estate, and the 116 acres which it did own is not more than was shown to be reasonably necessary for its corporate purposes. If the platting and selling of lots were not within the authority as granted in the charter, such acts were *ultra vires* and not binding upon the corporation, even though it derived profit from the sale thereof. Where an act is not *ultra vires* for want of power in the corporation but for want of power in its agents or officers or because of the disregard of mere formalities which the law requires to be observed or is an improper use of one of the enumerated powers, it may be valid as to third persons; where, however, the contract of a corporation is *ultra vires* in the proper sense, that is to say, beyond the object of its creation as defined in the law of its organization and therefore beyond the powers conferred upon it by the legislature, the contract is not only voidable, but is wholly void and without any legal effect. The objection to the contract in such case is not merely that the corporation ought not to have made it, but that it could not make it. Such a contract cannot be ratified by either party, because it could not have been authorized by either party. No performance on either side can give the unlawful contract validity or be the foundation of any right of action upon it. When a corporation is acting within the general scope of the powers conferred upon it by the legislature, the corporation, as well as persons contracting with it, may be estopped to deny that it has complied with the legal formalities which are prerequisites to its existence or to its action, because such prerequisites might, in fact, have been complied with; but when the contract is beyond the powers conferred upon it by existing laws, neither the corporation nor the other party to the contract can be estopped to show that it was prohibited by those laws by consenting to it or acting upon it. *National Home Building Ass.* v. *Home Savings Bank,* 181 Ill. 35; *First Methodist Episco-*

*pal Church* v. *Dixon,* 178 id. 260; *Farson* v. *Fogg,* 205 id. 326.

The certificate issued to the plaintiff in error was nothing more than a license given by the corporation to the public, which it could revoke at any time. The evidence in this case wholly fails to show that any consideration was paid by the plaintiff in error to the defendant in error for the privileges therein contained. It was issued about eleven months after his purchase and after the deed of conveyance was made to him. The evidence also shows that he was at one time a member of the board of directors of the defendant corporation and was also one of its superintendents, and he must therefore have been familiar with the purposes of its organization, the powers conferred by its charter, and was chargeable with notice of the fact that in granting the certificate the corporation was acting beyond its powers and authority and that such acts were a nullity. To hold otherwise would be to permit a corporation, without the consent of its stockholders, to give away all of its property, and thus entirely destroy its ability to carry out the purpose of its creation.

Our attention is called to the case of *Maywood Co.* v. *Village of Maywood,* 118 Ill. 61, and it is insisted, upon the strength of that case, the acts of this corporation were valid and binding upon it. An examination will show that the cases are clearly distinguishable. The Maywood corporation was organized for the purpose of carrying on a real estate business. In furtherance of that business it dedicated a certain piece of ground to the village of Maywood. It afterwards sold the remainder of its real estate on the strength of that dedication. The dedication was within the powers of the corporation and in furtherance of its chartered business. The quantity of land dedicated was very small in comparison with the whole amount of land owned by the corporation. The dedication was accepted by the public and therefore became binding. In that case, if the board of

directors had sought to dedicate all of its real estate to the public, or if the dedication had been outside of the business for which the corporation was organized, a different question would have been presented.

Our examination of the whole case has led to the conclusion that the evidence wholly fails to show a legal dedication by the defendant company or an acceptance by the public, and also that the dedication, if it had been made, would have been *ultra vires,* as beyond the authority of the directors; furthermore, that the plaintiff in error had full knowledge of such want of authority, and could not, in any event, be heard to complain.

The decree of the circuit court will be affirmed.

*Decree affirmed.*

Afterwards, on consideration of the petition for rehearing, the following additional opinion in the case was announced by Mr. Justice CARTER:

Motion has been made to strike the petition for rehearing in this case from the files because it is in violation of Rule 30 of this court. We desire to give every opportunity on a petition for rehearing to point out any matters that appear "to have been overlooked or misapprehended by the court," but the rule provides that "in no case will any argument be permitted in support of such petition." While the volume of work in this court requires, for that reason alone, that this rule should be strictly enforced, still more important is it for the proper administration of justice that a reargument of the case should not be permitted on a petition for rehearing. Such practice would tend to cause counsel to neglect the careful presentation of their cases in the first instance. It is highly important, both from the standpoint of litigants and the court, that cases should be fully and exhaustively presented by printed briefs, and, if desired, by oral arguments, before any decision is reached. After this has been done and the case has been considered and decided, to

permit re-argument can serve no useful purpose and would justly subject this court to criticism. This petition is a manifest attempt to re-argue the points presented by the original briefs and fully considered in the opinion.

The petition for rehearing in the case at bar will be stricken from the files. *Petition stricken.*