444 P.2d 437

The CITY OF SCOTTSDALE, Arizona, a municipal corporation, Appellant,

v.

Jeanne MOCHO, and Plaza Properties, Inc., aka Indian Plaza Properties, an Arizona corporation, Appellees.

No. 1 CA–CIV 531.

Court of Appeals of Arizona.

Aug. 19, 1968.

Richard Filler, City Atty., Scottsdale, for appellant.

Shimmel, Hill, Kleindienst & Bishop, by Richard G. Kleindienst and John C. King, Phoenix, for appellee Plaza Properties, Inc.

Roe & Petsch, by Carl W. Roe, Scottsdale, for appellee Jeanne Mocho.

FRANK X. GORDON, Jr., Judge of the Superior Court.

Plaintiff Mocho (appellee) as lessee, brought suit against defendant Plaza Properties, Inc., (appellant) to rescind a lease of a portion of a tract within a platted subdivision on the grounds that defendant was not the owner of said tract. The City of Scottsdale, hereinafter called "City", was permitted to intervene since the City contends that the tract was dedicated to the general public for parking.

Plaintiff had been leased the North 250 feet of Tract C of said subdivision, including a building thereon, which she intended to operate as a restaurant.

The trial court made written findings of fact and conclusions of law and held that defendant was the owner and entitled to possession of the entire Tract C and that the City had no interest in said property. The City objected to the form of judgment insofar as it related to the entire tract, rather than the North 250 feet thereof, which objections were overruled, and the City appeals from the order overruling said objection and from the judgment.

From the evidence it appears that on January 7, 1958, the City Council of Scottsdale approved a commercial subdivision plat known as Indian Plaza Properties, subject to, among other conditions, that a large tract in the center of said subdivision known as Tract C "be set aside for parking". Subsequently, they approved in writing by endorsement on the plat, a plat of Indian Plaza Properties which contains the following designation on Tract C in a parenthetical statement, "Reserved for Parking Area". Said plat was recorded on March 14, 1958.

Defendant was the purchaser of the property under a trust agreement. The majority of the commercial lots within the subdivision are 30 feet in width and approximately 80 feet in depth. It was necessary that off-street parking be provided on the property at the time of development.

After the plat was recorded, defendant sold all 108 lots and Tracts A and B in said subdivision, the conveyances describing the property by reference to the plat.

There is no dispute that at the time the plat was recorded, a building was located on the northerly portion of Tract C (which is the building that was ultimately leased to plaintiff) and on March 13, 1959, approximately one year after the recordation of the plat, the trustee under the trust agreement leased the North 250 feet of Tract C to a corporation which commenced operation of a private club known as the Black Sheep Club thereon. The trustee later sold the North 250 feet of Tract C to

the Black Sheep Club on November 14, 1960, but the Club ceased operations in 1962, and the property reverted to the trustee in 1963. Thereafter, defendant leased the North 250 feet of Tract C to plaintiff for use as a restaurant.

The sole owners of defendant corporation by their testimony denied any intent to dedicate Tract C to the general public. There was testimony to the effect that their intent was that the lot be used for the purpose of parking for the lot owners and for the building that was on there.

The owners of defendant corporation professed ignorance of the designation on Tract C at the time the plat was recorded. On some of the preliminary plats of the subject property, the building on Tract C was shown, but not on the approved plat.

The president of defendant corporation maintained that it was their intention to except that portion of Tract C where the building was located.

The first time defendant requested the City to amend Tract C to except the portion where the building is located occurred in July, 1965, at which time all of the lots and tracts comprising said subdivision, other than Tract C, had been sold. Since the vacation of the building on Tract C by the Black Sheep Club in 1962, there has been no occupancy of said structure. There had been, up to the time of the filing of appellant's opening brief, development of only four or five of the 108 lots.

After the northerly 250 feet of Tract C was leased to the Black Sheep Club, defendant paid certain taxes, assessments and municipal charges relating to Tract C.

The major question presented in this appeal is whether the recording of the plat with the words inscribed on Tract C, "Reserved for Parking Area", constituted a dedication of Tract C to the general public for parking purposes, either by a statutory dedication by plat or a common law dedication.

The City contends that there was a dedication by plat of Tract C to the public and that the acts of the platter at the time of recording and the circumstances surrounding the recording of the plat is the only evidence relevant to determine the intention of the platter, rather than the actions or the statements of the platter as to what their intentions were at a time remote from said recordation.

The appropriate sections of the Arizona Revised Statutes are as follows:

"§ 9–254. Upon filing a map or plat, the fee of the streets, alleys, avenues, highways, parks *and other parcels of ground reserved therein to the use of the public* vests in the town, in trust, for the uses therein expressed. If the town is not incorporated, then the fee vests in the County until the town becomes incorporated." (Emphasis ours)

"§ 9–477.

"A. Upon the plat or map shall be endorsed a name, title or designation of the subdivision and the acknowledgment by the owner or some person for him duly authorized thereunto by deed.

\* \* \* \* \* \*

"C. Upon the filing of the plat or map, the fee of all streets, alleys, parks *and other parcels of ground reserved therein to the use of the public,* shall vest in the public." (Emphasis ours)

The parcel involved herein is obviously not a street, alley, avenue or highway. Also it is not a "park" within the common usage of the term. A review of the circumstances surrounding the City's requirement shows that it required this area to be set aside for off-street vehicular parking. So, if the City's contention is to prevail, that this is a statutory dedication by plat, the words on Tract C, "Reserved for Parking Area", must come within the wording of both Sections 9–254 and 9–477, A.R.S., "and other parcels of ground reserved therein to the use of the public."

The City further contends that if the dedication falls short of a statutory dedication by plat, that a common law dedication has occurred, as the defendant has, after recording the plat, sold lots by reference thereto, citing us to Allied American In-

vestment Co. v. Pettit, 65 Ariz. 283, 179 P.2d 437 (1947), wherein our Supreme Court stated:

"Dedication is the intentional appropriation of land by the owner to some proper public use. Bessemer Land & Imp. Co. v. Jenkins, 111 Ala. 135, 18 So. 565, 56 Am.St.Rep. 26; People v. Marin County, 103 Cal. 223, 37 P. 203, 26 L.R.A. 659. The intention of the owner to set aside lands or property for the use of the public is the foundation and life of every dedication. See annotations in 7 A.L.R. 727; Ann.Cas. 1916D, 1079; and Ann. Cas. 1917A, 1112. The general rule set forth in the text in 16 Am.Jur., Dedication, sec. 16, is as follows: 'Neither a written grant nor any particular words, ceremonies, or a form of conveyance, are necessary to render the act of dedicating land to public uses effectual in common law. Anything which fully demonstrates the intention of the donor and the acceptance by the public works the effect. Words are unnecessary if the intent can be gathered from other sources. * * *' See also Collins v. City of Phoenix, 9 Cir., 269 F. 219.

"The doctrine of dedication by plat is summarized in 16 Am.Jur., Dedication, § 23, as follows: 'The doctrine of dedication by plat is frequently connected with the sale of lots shown on the plat. The owner of a tract of land is held to dedicate such portions thereof as are designated for public use on the plat with reference to which he sells lots out of the tract. * * *' (Citing countless cases.)

"Fifty-two years have elapsed since this doctrine was given recognition in Arizona. In the early case of Evans v. Blankenship, 4 Ariz. 307, 39 P. 812, the question under consideration was whether a lot of land had been dedicated as a public square. There had been no formal dedication of the public square other than the filing of a map or plat in the office of the county recorder, The tract in question was designated on the map as a tract ' "570" on its sides and "300" on its ends.' On the margin of the map appeared these words 'Public Grounds, 570–300.' The court held that the owner in causing the map to be recorded had made an irrevocable dedication of the land in question to the public. * * *."

In the Allied American case, supra, the formal dedication certificate on the plat was, as is true in the plat involved in this case, limited to streets and alleys, and the argument was made that only streets and alleys were dedicated and no other areas designated thereon for the public could be included as dedications upon recordation of the plat. Our Supreme Court held in that case that the formal dedication certificate did not preclude the dedication of other areas so designated on the plat.

We are of the opinion that neither of appellant City's contentions can be sustained as there has been no sufficient showing that the alleged dedication in this case was for a general public purpose as distinguished from a use by a specific class of the public for a limited purpose.

As stated in the Allied American case, supra, in order to have a dedication, there must not only be an intent to dedicate, and an acceptance, but there must also be a dedication to a public use. In the present case, there was no intent to dedicate, and no proper public use.

The burden of proof to establish a dedication is on the party asserting it. 11 McQuillan, Municipal Corporations, Sec. 33.37.

"Dedication is not presumed nor does a presumption of an intent to dedicate arise unless it is clearly shown by the owner's acts and declarations. * * *" City of Phoenix v. Landrum and Mills Realty Co., 71 Ariz. 382, 227 P.2d 1011.

Proof of facts necessary to constitute dedication must be "clear, satisfactory and unequivocal." 23 Am.Jur.2d, Dedication, Sec. 79, at p. 65. The courts have placed a heavy burden upon one asserting or claiming a dedication. See Shia v. Pend-

ergrass, 222 S.C. 342, 72 S.E.2d 699 (1952) where the court stated:

"It must be borne in mind that title to real estate, or any interest therein, is ordinarily passed by deed or will, and, while one may lose his land without an actual conveyance of the same, the acts and conduct upon his part, and upon the part of the one claiming to have acquired such title in such way, must be so unequivocal and positive as to leave little doubt that it was the intention of the owner to dedicate the same to the public use. By this we do not mean that the expression of such an intent upon the owner's part need be proven, but his acts and conduct in regard to the property must be of such character that the public, dealing with him upon the strength of such conduct, could not but believe that his intention was to vest an easement therein in the public. * * *

"As was said by the Supreme Court of California in City and County of San Francisco v. Grote, 120 Cal. 59, 52 P. 127, 128, 41 L.R.A. 335, 65 Am.St.Rep. 155: 'It is not a trivial thing to take another's land, and for this reason the courts will not lightly declare a dedication to public use.'

"Our Court, in Seaboard Air Line R. Co. v. [Town of] Fairfax, 80 S.C. 414, 61 S.E. 950, 956, quoting with approval from 13 C.Y.C., page 476, has announced the same rule in these words:

" 'Dedications being an exceptional and a peculiar mode of passing title to interest in land, the proof must usually be strict, cogent, and convincing, and the acts proved must not be consistent with any construction other than that of a dedication.' "

■ We do not feel that the usage contemplated of the property involved was a proper public use. The Arizona Supreme Court has not held that a parking lot is a proper subject of dedication. The Court has found a dedication only in cases involving either a park or a street. A park is, by its very nature, a public place, where-

in all segments of the general public are expected to be able to use the same. So, too, is a street. A parking lot, however, can be owned by the public or private individuals.

Although other states have permitted the dedication of land for uses other than parks and streets, the City has not cited us to any jurisdictions which have upheld a designation of a vehicular parking area on a plat as a dedication to the public. Also, neither American Jurisprudence Second or Corpus Juris Secundum cites a single instance involving the dedication of a parking lot. See 23 Am.Jur.2d, Dedication, Sec. 4; and 26 C.J.S. Dedication § 8.

■ Land can be dedicated for the use of the general public, "but * * * there can be no dedication to private uses, or to uses public in their nature but the enjoyment of which is restricted to a limited part of the public." 26 C.J.S. Dedication § 8, at p. 408; 11 McQuillan, Municipal Corp., Sec. 33.08.

■ We believe, after reviewing the evidence that there was competent evidence before the trial court sufficient to sustain its findings and conclusions. A reasonable interpretation of this evidence would be that the southern portion of Tract C was reserved as a parking lot for the private use of the customers of those businesses adjoining the property. It would be a strained construction of the evidence to conclude that all members of the public were invited to park there—those not intending to shop at the stores in that subdivision. Certainly the owners or proprietors of the stores in that subdivision would not anticipate or condone the use of these parking spaces by persons wishing to use them for indefinite periods of time while they were shopping elsewhere, or using the area to store their cars while they went elsewhere for reasons unconnected with shopping. The property owners in the subdivision bought their land on the assumption that the southern portion of Tract C would be used as a parking lot for their customers. That portion of Tract

C was, therefore, limited to the use of only a part of the public, and thus was reserved for a private instead of a public use. See Shia v. Pendergrass, supra, where the court refused to find a dedication because only customers were using the land in question and not the general public.

"The whole evidence, in our opinion, can give rise to but one reasonable inference, and that is, that this twelve foot strip of land was used primarily by the tenants who rented the warehouse on Mrs. Berry's lot, now owned by appellant; and that such use of it as was made by the public or a certain class of the public having business with the stores abutting thereon, was only by and through the permission of Mrs. Berry, without the vesting of any acquired rights thereto. * * *"

■ We hold that in either a dedication by plat, or a common law dedication, the use contemplated of the land must be a use by the general public, and not for a limited class thereof. Therefore, under either contention, the City cannot prevail.

The City contends that the trial court may not consider any evidence which occurred subsequent to the recording of the subdivision plat to arrive at its determination of what the intent of the platter was at the time of recording.

■ While we agree with the general statement in 23 Am.Jur.2d, Dedication, Sec. 19:

"Where the facts are undisputed and admit of but one legal interpretation or can lead to but one legal conclusion, the question of intention is one of law.",

we do not feel that the facts in the instant case fall within this category. Here, the certificate of dedication on the plat referred to streets and alleys only. If the City wishes to prove that other areas on the plat were also dedicated to the public, it must prove by clear, satisfactory and unequivocal proof that there was an intent by the platter to dedicate for a prop-

er public purpose, either expressed or implied.

■ Although the City could have shown acts subsequent to the plat as being consistent with the intent to dedicate (See 26 C.J.S. Dedication § 46 a(2) (b)) none were shown. To rebut such an inference resulting from any statement on the plat, defendant could show acts inconsistent with the intent to dedicate. (See C.J.S. citation above, at page 499.)

"On the other hand, acts of an alleged dedicator obviously inconsistent with an intent to dedicate are competent as tending to negative the intention to dedicate. Among such acts are those tending to show a continued dominion, or control and ownership, over the property by the alleged dedicator, * * * or retains or locates buildings and appurtenances on property alleged to be dedicated; * * * pays taxes and assessments on it; * * *"

■ Also, the owner's testimony as to what his intention was at the time of the alleged dedication is competent and relevant, although not conclusive. See 26 C.J.S. Dedication § 46 a(2) (a):

" * * * [R]elevant oral declarations of the owner of property are admissible in evidence on the issue of intent to dedicate it to a public use."

See also Lovington Tp. v. Adkins, 232 Ill. 510, 83 N.E. 1043 (1908).

"Counsel for appellant sought to show that it was not appellant's intention to dedicate a 20-foot strip of land off the south side of said section 33 for highway purposes, if it was a fact that the south line of the said section is a straight east and west line, but the court refused to allow the question to be answered. This evidence was proper. The rule is that the intent to dedicate will not be permitted to prevail against the unequivocal acts and conduct of the owner inconsistent with such intent. Where the owner swears what his intention was, he can be contradicted by his acts, con-

duct, or declarations; but the law permits the owner to testify as to what his intention actually was, and this testimony is to be considered in connection with all the other facts and circumstances in the case. City of Chicago v. Chicago, Rock Island & Pacific Railway Co., 152 Ill. 561, 38 N.E. 768; Township of Madison v. Gallagher, 159 Ill. 105, 42 N.E. 316; Seidschlag v. Town of Antioch, 207 Ill. 280, 69 N.E. 949; Town of Bethel v. Pruett, 215 Ill. 162, 74 N.E. 111."

The Supreme Court of Arizona has recognized the relevance of allowing the owners to testify as to their intent. In Evans v. Blankenship, 4 Ariz. 307, 39 P. 812 (1895) the Court stated:

"While a party may sometimes testify as to his original intention in regard to the dedication to the public, the dedication is generally proved by evidence of the ower's acts, together with the surrounding circumstances."

Although if there has been a dedication, the payment of taxes on the property does not prevent a municipality from accepting the dedication, the general rule is that the payment of taxes and other assessments is relevant in determining whether there has been a dedication. See 23 Am.Jur.2d, Dedication, Sec. 78, at p. 64; Nicholas v. Salisbury Hardware & Furniture Co., 248 N.C. 462, 103 S.E.2d 837 (1958); and Stacey v. Glen Ellyn Hotel & Springs Co., 223 Ill. 546, 79 N.E. 133, 8 L.R.A.,N.S., 966 (1906).

The presence of the structure on the North 250 feet of Tract C at the time of the recording of the plat; the retaining thereof and exercising control and dominion thereover; and the payment of taxes, although not conclusive, are all competent and relevant on the issue of whether there was at the time of the filing or recording of the plat an intent to dedicate Tract C for a public purpose.

We find that there was sufficient competent evidence before the trial court to justify its findings, conclusions and judgment, and therefore it is ordered affirming the same.

CAMERON, C. J., and DONOFRIO, J., concur.

NOTE: Judge HENRY S. STEVENS having requested that he be relieved from consideration of this matter, Judge FRANK X. GORDON, JR. was called to sit in his stead and participate in the determination of this decision.