NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

TMS VENTURES LLC, *Plaintiff/Appellee/Cross-Appellant*,

*v.*

TERESA C. ZACHARIAH, et al., *Defendants/Appellants/Cross-Appellees*.

No. 1 CA-CV 18-0712
No. 1 CA-CV 19-0388
(Consolidated)
FILED 4-15-2021

Appeal from the Superior Court in Maricopa County
No. CV2016-005381
The Honorable Pamela S. Gates, Judge

**AFFIRMED IN PART; REVERSED IN PART; VACATED AND
REMANDED IN PART**

COUNSEL

Burch & Cracchiolo, P.A., Phoenix
By Daryl Manhart, Andrew Abraham, Bryan F. Murphy, Casey S. Blais
*Co-Counsel for Plaintiff/Appellee/Cross-Appellant*

Beus Gilbert McGroder, PLLC, Phoenix
By Cory L. Broadbent, Cassandra H. Ayres
*Co-Counsel for Plaintiff/Appellee/Cross-Appellant*

Osborn Maledon, P.A., Phoenix
By Eric M. Fraser, Jeffrey B. Molinar
*Co-Counsel for Defendants/Appellants/Cross-Appellees*

Francis J. Slavin PC, Phoenix
By Francis J. Slavin, Daniel J. Slavin, Jessica L. Dorvinen
*Co-Counsel for Defendants/Appellants/Cross-Appellees*

---

**MEMORANDUM DECISION**

Judge D. Steven Williams delivered the decision of the Court, in which Presiding Judge Michael J. Brown and Chief Judge Peter B. Swann joined.

---

**W I L L I A M S**, Judge:

**¶1**		Appellants Teresa and Joseph Zachariah, Ingrid and Alfred Harrison as trustees of the Ingrid Lenz Harrison Revocable Trust, and Roseanne Appel (collectively, "the Neighbors") appeal the superior court's ruling that Appellee TMS Ventures, LLC ("TMS") established a common law dedication of an easement traversing portions of their properties to reach its property. TMS cross-appeals the court's later ruling declining to award attorney fees for prevailing on summary judgment on the Neighbors' anticipatory nuisance counterclaim. For reasons set forth below, we reverse on common law dedication and vacate the attorney fees and cost award to TMS. Because the Neighbors do not challenge the court's alternative ruling that TMS also established an implied way of necessity, we remand to allow the court to address attorney fees on that claim.

**FACTUAL AND PROCEDURAL BACKGROUND**

**¶2**		In 1959, Phoenix Title and Trust Company ("Phoenix Title") recorded a subdivision plat for the Stone Canyon East subdivision, the relevant portion of which appears below:

2



¶3        One year later, Phoenix Title recorded an "Easement for Roadway" which pronounced "it is now desired to increase the width of San Miguel Avenue as shown on [the 1959] plat and to provide for another roadway not shown in said plat." The easement allowed Maricopa County to increase the width of San Miguel Avenue to fifty feet and granted to the county:

> A strip of land 25′ wide along the N. side and a strip of land 25′ wide along the S. line of the lot line separating Lots 22 and 23, and 25′ wide N. of the S. border of said subdivision in Lots 24 and 25.

The parties dispute the exact parameters of these grants, depicting them as follows:





Although the Easement for Roadway did allow for underground utility facilities, the two-part, single easement grant was expressly intended "for

roadway purposes only . . . to maintain a public way for vehicular or foot traffic thereon."

¶4 Phoenix Title expressly referred to the Easement for Roadway in its deed conveying Lot 24, but not in its deeds conveying Lots 22 or 23. The Zachariahs, Appel, and the Harrisons purchased Lots 22, 23, and 24, respectively, between 2009 and 2010. There is an approximate 12-foot wide driveway from the East San Miguel cul-de-sac serving the Zachariahs' home on Lot 22, depicted below:



Appel uses a portion of this driveway to access her home on Lot 23. Part of the driveway is located on Lot 23, and the entire driveway is located within the area described in the Easement for Roadway. The driveway has been gated since 1987, and the Zachariahs currently control access.

¶5 TMS purchased the property immediately south of the land depicted above (the "TMS Property") in 2012. The TMS Property is bordered on the west, south and partially on the east by city-owned land. On March 31, 2016, TMS wrote to the Neighbors demanding that they acknowledge the easement depicted in the Easement for Roadway to enable construction of a driveway to the TMS Property. When the Neighbors refused, TMS sued them seeking to quiet title to the Easement for Roadway and for declaratory and injunctive relief.[1] The Neighbors counterclaimed

---

[1] TMS also sued the owner of Lot 25, Jerry D. Smith as Trustee of the JDS Trust Dated August 22, 2005. Smith agreed to be bound by the outcome of the litigation and is not a party to this appeal.

for, among other things, anticipatory nuisance based on "noise, vibration, dust and odor" and "damage to the footings, foundation, walls, roofs and other structural parts of their homes" that could result from future construction of a driveway to the TMS Property.

¶6         On TMS' motion, the superior court bifurcated trial, ordering a "bench trial on the claims which concern access to the property and a separate jury trial on the [Neighbors'] counterclaim for nuisance." Following the bench trial, the court ruled TMS had established a common law dedication of the Easement for Roadway and, alternatively, an implied way of necessity within the Easement for Roadway. It subsequently granted summary judgment to TMS on the Neighbors' anticipatory nuisance counterclaim.

¶7         TMS applied to recover $653,380.25 in attorney fees and $14,859.01 in costs. TMS apportioned its claim over three law firms who had represented them during the litigation as follows: $385,756.75 in attorney fees and $5,911.59 in taxable costs incurred by Burch & Cracchiolo, P.A. "for the quiet title claims and defending the quiet title counterclaims"; $234,488.50 in attorney fees and $8,947.42 in costs incurred by Beus Gilbert PLLC "for defending the anticipatory nuisance counterclaim"; and $33,135.00 in attorney fees incurred by Berry Riddell, LLC "for initially defending the non-covered counterclaims (before referring the matter to Beus Gilbert)." The court awarded $369,410.25 in attorney fees and $4,466.43 in costs "for work performed by Burch & Cracchiolo, P.A.," $8,947.42 in costs but no fees "for work performed by Beus Gilbert PLLC," and no fees for work performed by Berry Riddell, LLC.

¶8         The Neighbors timely appealed from the final judgment. TMS timely cross-appealed the court's fee award. We have jurisdiction under Article 6, Section 9, of the Arizona Constitution and A.R.S. § 12-2101(A)(1).

## DISCUSSION

### I.    The Neighbors' Appeal

¶9         After a bench trial, we review the court's legal conclusions de novo but defer to its findings of fact unless clearly erroneous. *Town of Marana v. Pima County*, 230 Ariz. 142, 152, ¶ 46 (App. 2012). A finding of fact is not clearly erroneous if it is supported by substantial evidence even if there is substantial conflicting evidence. *Castro v. Ballesteros-Suarez*, 222 Ariz. 48, 51–52, ¶ 11 (App. 2009).

¶10        On appeal, the Neighbors limit their arguments to "the superior court's legal rulings, not the superior court's findings of fact." Nonetheless, we must consider the evidence presented at trial in the light most favorable to upholding the court's rulings. *Town of Marana*, 230 Ariz. at 152, ¶ 46.

### A.        The Neighbors' Limited Challenge Is Not Moot

¶11        The Neighbors do not challenge the court's ruling finding an implied way of necessity within the area described in the Easement for Roadway; they only challenge the court's finding of a public dedication. As access to the TMS Property is not at issue, we first consider whether the distinction the Neighbors seek is meaningful or purely theoretical. *See Progressive Specialty Ins. Co. v. Farmers Ins. Co. of Ariz.*, 143 Ariz. 547, 548 (App. 1985) ("It is not an appellate court's function to declare principles of law which cannot have any practical effect in settling the rights of litigants.").

¶12        A landowner can dedicate land to a proper public use. *Pleak v. Entrada Property Owners' Ass'n*, 207 Ariz. 418, 421, ¶ 8 (2004) (citing Restatement (Third) of Prop.: Servitudes § 2.18(1) (2000)). Under common law dedication, the public acquires an easement to use the dedicated property for the specified purposes but fee title remains with the dedicator.[2] *Id.* Once perfected, a common law dedication is irrevocable. *City of Chandler v. Ariz. Dep't of Transp.*, 224 Ariz. 400, 403, ¶ 9 (App. 2010).

¶13        In contrast, an implied way of necessity only grants access to the owner of the landlocked parcel. *Dabrowski v. Bartlett*, 246 Ariz. 504, 514, ¶ 26 (App. 2019). And it only grants whatever access is necessary for the beneficial use of the landlocked parcel. *Bickel v. Hansen*, 169 Ariz. 371, 374 (App. 1991). Moreover, unlike a common law dedication, an implied way of necessity is appurtenant to the parcel it serves. *College Book Ctrs., Inc. v. Carefree Foothills Homeowners Ass'n*, 225 Ariz. 533, 541, ¶ 29 (App. 2010).

¶14        As such, there are meaningful and relevant differences between a common law dedication of the Roadway for Easement and an implied way of necessity within the Roadway for Easement. *Cf. Kadlec v. Dorsey*, 224 Ariz. 551, 553, ¶ 10 (2010) (noting that private roads located within easements do not automatically become public). We therefore consider the merits of the Neighbors' appeal.

---

[2] Dedication of roadways also may be accomplished by statute. A.R.S. § 9-254. That method is not at issue in this case.

### B. Common Law Dedication

**¶15** An effective dedication of private land for public use has two components—the landowner's offer to dedicate and the general public's acceptance. *Pleak*, 207 Ariz. at 423–24, ¶ 21. The party asserting dedication bears the burden of proof. *Kadlec*, 224 Ariz. at 552, ¶ 8. "Dedication is not presumed nor does a presumption of an intent to dedicate arise unless it is clearly shown by the owner's acts and declarations." *City of Phx. v. Landrum & Mills Realty Co.*, 71 Ariz. 382, 386 (1951). "No particular words, ceremonies, or form of conveyance is necessary to dedicate land to public use; anything fully demonstrating the intent of the donor to dedicate can suffice." *Pleak*, 207 Ariz. at 424, ¶ 21.

**¶16** The Neighbors concede the Easement for Roadway constituted an offer to dedicate. They contend, however, that the offer was never accepted. Under Arizona law, "[a]nything which fully demonstrates the intention of the donor and the acceptance by the public works the effect." *City of Chandler*, 224 Ariz. at 403, ¶ 10 (quoting *Allied Am. Inv. Co. v. Pettit*, 65 Ariz. 283, 287 (1947)); *see also Allied*, 65 Ariz. at 287 ("Words are unnecessary if the intent can be gathered from other sources."). Our caselaw discusses three general methods of establishing acceptance, which we address below.

#### 1. Acceptance By the Government

**¶17** The public recipient, whether it be the state, a county, or a municipality, can accept an offer of dedication either formally or by taking steps to maintain the dedicated land. *See City of Chandler*, 224 Ariz. at 403, ¶ 11 (finding acceptance where "the County properly accepted the roadway dedications for the public benefit"); *Evans v. Blankenship*, 4 Ariz. 307, 316 (1895) (city council's direction to street and alley committee to "clear up the plaza" constituted "a sufficient and timely acceptance" of the plaza). The parties agree that neither Maricopa County nor the Town of Paradise Valley accepted the Easement for Roadway.

#### 2. Acceptance By Reference In a Deed of Sale

**¶18** Acceptance also can arise if a deed of sale expressly refers to the deed of dedication, giving the buyer notice of the dedication. *Lowe v. Pima Cnty.*, 217 Ariz. 642, 647, ¶ 21 (App. 2008); *see also Pleak*, 207 Ariz. at 424, ¶ 23 (finding acceptance because "the lots in Entrada were sold after recordation of the Survey and . . . the conveyance documents specifically referred to the Survey").

¶19     Here, while the deeds for the Harrison and Smith lots referenced the Easement for Roadway, the deeds for the Zachariah and Appel lots did not. In *Lowe*, we placed the burden on the original owner to "expressly refer[] to the deed of dedication in the deeds to the parcels they later sold so that buyers would have had notice of the dedication." 217 Ariz. at 647, ¶ 21. If Phoenix Title wanted to complete a public dedication of the Easement for Roadway, it could have referenced the Easement in the deeds of sale for each burdened lot. For reasons not apparent in the record, it did not do so. *See City of Scottsdale v. Mocho*, 8 Ariz. App. 146, 151 (1968) (requiring "clear, satisfactory and unequivocal proof that there was an intent by the platter to dedicate for a proper public purpose, either expressed or implied").

¶20     Neither side addresses whether an offer of dedication may be partially accepted when some of the relevant chains of title reference the relevant deed of dedication or recorded plat and some do not. The superior court did not find partial acceptance; it instead based its ruling on evidence that the Zachariahs and Appel knew about the Easement for Roadway when they purchased their lots.[3] The court did not, however, cite any authority suggesting actual knowledge of a proposed dedication is an adequate substitute for express notice in the deed of sale, and we are not aware of any. It instead cited *Neal v. Hunt*, 112 Ariz. 307, 311 (1975), for the proposition that "constructive and actual knowledge have the same effect." There, our supreme court held that a party who "acted reasonably under the circumstances by searching the Mohave County recorder's office" but found "nothing to confirm the existence" of a prior water rights agreement did not have constructive notice of the agreement. *Id.*

¶21     *Neal* is not a common law dedication case and did not address whether a purchaser accepts a common law dedication of an easement by learning that the easement exists. Rather, in *Lowe*, we held that landowners who knew their deed excluded the northernmost thirty feet of the

---

[3] The Neighbors contend this ruling violated the law of the case because a previously assigned judge ruled that "a common law easement requires acceptance, not just notice." The court made this statement in a minute entry denying summary judgment; it thus was not binding for law of the case for horizontal appeal purposes. *See Sorensen v. Farmers Ins. Co. of Ariz.*, 191 Ariz. 464, 465 (App. 1997) ("A denial of a motion for summary judgment is an intermediate order deciding simply that the case should go to trial."); *Powell-Cerkoney v. TCR-Mont. Ranch Joint Venture, II*, 176 Ariz. 275, 279 (App. 1993) ("[W]e will not apply law of the case if the prior decision did not actually decide the issue in question.").

purchased parcel still were not obligated "to search for a recorded deed dedicating property that they were not purchasing." 217 Ariz. at 647, ¶ 21. Likewise, the Zachariahs and Appel were not obligated to search deeds for other nearby lots they did not intend to purchase. Their actual knowledge of the Easement for Roadway does not constitute acceptance by deed. *See Pleak*, 207 Ariz. at 424, ¶ 23 (quoting *Cnty. of Yuma v. Leidendeker*, 81 Ariz. 208, 213 (1956) ("[T]he sale of lots referencing a recorded plat containing the dedication constitutes an 'immediate and irrevocable' dedication.").

### 3.     *Acceptance By Use*

**¶22**         Acceptance also may be premised on actual use by the general public. *Drane v. Avery*, 72 Ariz. 100, 102 (1951), *overruled in part on other grounds by Chadwick v. Larsen*, 75 Ariz. 207 (1953); *Allied*, 65 Ariz. at 290 (1947); *see also* Restatement (Third) of Prop.: Servitudes § 2.18 cmt. d. While what constitutes general public use varies based on "the location, size, and settlement patterns of the community[,] . . . [t]he use must . . . be of such character as to indicate the intention to accept the property for the particular purpose to which it has been dedicated." 23 Am. Jur. 2d *Dedication* § 50 (2020). As such, use by "a limited class" of the public generally is not enough. *Mocho*, 8 Ariz. App. at 151.

**¶23**         TMS contends the Zachariahs and Appel became "part of the public" when using the portion of the driveway that encroached on the other's lot. We see no reasonable interpretation of the law under which the use of a shared driveway to access one's own property would constitute general public use. *See id.* at 150 (internal quotation marks omitted) ("[T]here can be no dedication to private uses, or to uses public in their nature but the enjoyment of which is restricted to a limited part of the public."). TMS also presented evidence that it "used the easement as . . . a prospective purchaser and . . . for its contractors and professionals to access the TMS Property," but conceded these uses were with the Zachariahs' permission. Permissive use does not constitute general public use. *See Sons of Union Veterans of Civil War, Dep't of Iowa v. Griswold Am. Legion Post 508*, 641 N.W.2d 729, 734 (Iowa 2002) (quoting *Culver v. Converse*, 224 N.W. 834, 836 (1929) ("Mere permissive use of a way, no matter how long continued, will not amount to a dedication.").

**¶24**         TMS also relies on the superior court's findings that the Neighbors and other lot owners on San Miguel Avenue "freely use the easement to cross their neighbor's property without payment or permission." It also cites evidence that "[t]he Town and public used the easement-widened portions of San Miguel Avenue that were paved" and

that various lot owners "used the easement for driveways or utilities." These uses were of the proposed width expansion of San Miguel Avenue, not the portion of the easement reaching the TMS Property.

¶25        While Arizona has not addressed the question, several courts have held that acceptance by use only applies to those portions of the proposed dedication where there has been established public use. *Sweeten v. Kauzlarich*, 684 P.2d 789, 792 (Wash. Ct. App. 1984); *see also Chalkley v. Tuscaloosa Cnty. Comm'n*, 34 So. 3d 667, 674 (Ala. 2009) (quoting 23 Am. Jur. 2d *Dedication* § 43 (2002) ("[T]he law on the subject generally is that '[a]n offer of dedication need not be accepted in its entirety; the property offered for dedication may be accepted in part and the remainder rejected.'"); *A & H Corp. v. City of Bridgeport*, 430 A.2d 25, 30 (Conn. 1980) (quoting *Meshberg v. Bridgeport City Trust Co.*, 429 A.2d 865, 869 (Conn. 1980) ("[I]f the actions of the public . . . are such as to show an intention to accept all rather than a part they will be construed as having that effect, but . . . acceptance of a part is not necessarily an acceptance of all."); *Baugus v. Wessinger*, 401 S.E.2d 169, 172 (S.C. 1991) (reversing summary judgment where there was "undisputed acceptance of the Nel La Lane roadway from Lake Tide Drive westerly across V.I.P. Estates" but "a serious dispute . . . as to whether the portion of the roadway on H. Wessinger's land has been accepted"). Others have found use of only part of the dedicated land can constitute acceptance of an entire dedication but only if the use evinces a purpose to accept the ***entire*** dedication. *See, e.g., Smith v. State*, 282 S.E.2d 76, 82 (Ga. 1981).

¶26        Even assuming Arizona would follow the latter path—an issue we need not decide—no such purpose is evident in this record, as the only uses shown of the proposed roadway were (1) the Zachariahs and Appel accessing their own properties and (2) TMS and third parties accessing the TMS Property with the Zachariahs' permission. *See Biagini v. Beckham*, 163 Cal. App. 4th 1000, 1013–14 (Cal. Ct. App. 2008) ("Where . . . the use of property is consistent with a private easement, there is no basis for finding an implied acceptance of an offer of dedication by public use."); *Sons of Union Veterans*, 641 N.W.2d at 734.

¶27        TMS also relies on *Pleak*, where we rejected "a proposed rule [that] would require proof of actual use by the public before finding an effective dedication of a common law roadway easement" because it "would inevitably result in detailed case-by-case inquiries regarding whether and how the public had used a particular roadway." 207 Ariz. at 425, ¶ 26. There, however, it was undisputed that the lots at issue "were sold after recordation of the Survey and that the conveyance documents

11

specifically referred to the Survey." *Id.* at 424, ¶ 23. *Pleak* therefore rejected the argument that express notice in the conveyance **and** actual public use are required to trigger a common law dedication, *id.* at 424–25, ¶¶ 23–26, a position the Neighbors do not take. For the same reason, TMS' reliance on *Hunt v. Richardson*, 216 Ariz. 114 (App. 2007), is misplaced. *Id.* at 119, ¶ 15 ("It is undisputed that the Richardsons, Hunts, and Transitional Living purchased their properties with reference to the Survey, thus constituting sufficient acceptance of the common law dedication.").

**¶28**        In summary, while "[a]nything which fully demonstrates . . . the acceptance by the public works the effect," no such demonstration appears in this undisputed record. *City of Chandler*, 224 Ariz. at 403, ¶ 10 (quoting *Allied*, 65 Ariz. at 287). We therefore reverse the superior court's ruling finding a common law dedication of the Easement for Roadway.

### C.        *Implied Way of Necessity*

**¶29**        As noted, *supra* ¶ 11, the superior court found the existence of an implied way of necessity "within the area over Lots 22, 23, and 24 described in the . . . Easement for Roadway." The Neighbors do not contest this finding, informing that "they are not challenging the ruling as to an easement by implied way of necessity." Consequently, we do not address it.

### D.        *Attorney Fees and Taxable Costs in Superior Court*

**¶30**        The Neighbors also challenge the attorney fees and cost award to TMS. Because we reverse on common law dedication, we vacate the fees and cost award on that claim. We consider the Neighbors' specific arguments against the award to provide guidance on remand.

**¶31**        The Neighbors contend TMS cannot recover attorney fees under A.R.S. § 12-1103(B) because an implied way of necessity does not transfer title to any part of the property, citing *Dabrowski*, 246 Ariz. 504. There, we held that parties who successfully proved the absence of any express or implied easement over their property could recover fees under § 12-1103(B). *Id.* at 516–17, ¶¶ 38–40. We see no reason why a party who successfully proves the existence of an implied way of necessity should be treated differently. *See* A.R.S. § 12-1101(A) (quiet title action "may be brought by anyone having or claiming an interest" in the subject property); *Chantler v. Wood*, 6 Ariz. App. 134, 138 (1967) ("[E]very interest in the title to real property, whether legal or equitable, may be determined in [a quiet title] action.").

¶32     The Neighbors also contend the superior court improperly awarded TMS nontaxable costs incurred by Beus Gilbert. A party cannot recover litigation expenses as costs without statutory authorization. *Schritter v. State Farm Mut. Auto. Ins. Co.*, 201 Ariz. 391, 392, ¶ 6 (2001). Taxable costs include:

>    1.     Fees of officers and witnesses.
>
>    2.     Cost of taking depositions.
>
>    3.     Compensation of referees.
>
>    4.     Cost of certified copies of papers or records.
>
>    5.     Sums paid a surety company for executing any bond or other obligation therein, not exceeding, however, one per cent on the amount of the liability on the bond or other obligation during each year it was in force.
>
>    6.     Other disbursements that are made or incurred pursuant to an order or agreement of the parties.

A.R.S. § 12-332(A). We review whether expenditures are taxable costs de novo. *Reyes v. Frank's Service and Trucking, LLC*, 235 Ariz. 605, 608, ¶ 6 (App. 2014). But we review the amount awarded for an abuse of discretion. *Lee v. ING Inv. Mgmt., LLC*, 240 Ariz. 158, 161, ¶ 11 (App. 2016).

¶33     The Neighbors challenge several items listed in Beus Gilbert's "Costs and Expenses" for "Photocopy Expense," "Expert Witness Fee," "Color Copies," "United Parcel Service," "Outside Messenger Service," "Scanned Documents," "Delivery Service," "Meal Expense," "Parking," and "Travel Expense." While some of these items are not taxable costs, it is unclear whether TMS claimed that they were. *See RS Indus., Inc. v. Candrian*, 240 Ariz. 132, 137, ¶ 16 (App. 2016) (denying recovery of expenses incurred for "photocopying, facsimiles, shipping and travel expenses"); *Newman v. Select Specialty Hosp.-Ariz., Inc.*, 239 Ariz. 558, 567, ¶ 42 (App. 2016) (denying recovery for "faxes, copies and postage," "expert witness fees and travel expenses," and "other amounts for miscellaneous expenses (such as his counsel's parking and lunch during trial)"). Indeed, TMS claimed only $8,947.42 of Beus Gilbert's $17,913.49 of "Costs and Expenses." And TMS offers a calculation on appeal under which the court could have reached the awarded amount by allowing only court reporter fees, opposing expert witness fees, process server fees, subpoena fees, and electronic court filing fees. *See RS Indus., Inc.*, 240 Ariz. at 137, ¶ 16 (noting that a party may

recover "costs it incurs in deposing an opposing party's expert witness" as taxable costs). On this record, we cannot say the court abused its discretion in determining an appropriate cost award.

## II.     TMS' Cross-Appeal

**¶34**        TMS also challenges the fees and cost award in its cross-appeal, contending the superior court improperly declined to award any fees it incurred in defending against the Neighbors' anticipatory nuisance counterclaim. TMS contends it could recover fees on the anticipatory nuisance counterclaim under A.R.S. § 12-341.01(A) because the counterclaim was "intertwined" with other contract-based claims. *See Ramsey Air Meds, L.L.C. v. Cutter Aviation, Inc.*, 198 Ariz. 10, 13, ¶ 17 (App. 2000) ("It is well-established that a successful party on a contract claim may recover not only attorneys' fees expended on the contract claim, but also fees expended in litigating an 'interwoven' tort claim."). But it does not appear the court awarded any fees under § 12-341.01(A). Upon granting summary judgment on anticipatory nuisance, the court invited TMS to file a proposed form of judgment and "leave blank spaces for an award [of] attorney's fees and taxable costs previously awarded pursuant to A.R.S. § 12-1103." And its post-trial ruling stated that TMS "is entitled to recover its attorneys' fees and costs pursuant to A.R.S. § 12-1103."

**¶35**        Even if we were to assume the court awarded fees under § 12-341.01(A), we would find no abuse of discretion. *See City of Cottonwood v. James L. Fann Contracting, Inc.*, 179 Ariz. 185, 194 (App. 1994) ("The [superior] court has discretion to determine . . . where a successful claim is intertwined with one for which fees are not awardable."). Claims are intertwined for purposes of a fee award under A.R.S. § 12-341.01(A) if they are based on the same set of facts and involve common allegations that require the same factual and legal development. *Skydive Ariz., Inc. v. Hogue*, 238 Ariz. 357, 369, ¶ 52 (App. 2015). Such is not the case here, as TMS acknowledged the anticipatory nuisance counterclaim did not arise from the same set of facts in its motion to bifurcate it from the remainder of the case. TMS instead stated that the counterclaim "allege[d] that [its] future construction activities will constitute a nuisance," while its claims and the Neighbors' other counterclaims involved "legal access." On those bases, TMS argued that "conducting two separate trials – one on legal access and the second on anticipatory nuisance – will expedite and economize the resolution of this case on the merits."

**¶36**        Moreover, the court granted summary judgment on the anticipatory nuisance counterclaim because it found the Neighbors could

not show "highly probable" injury resulting from future construction. *See McQuade v. Tucson Tiller Apartments, Ltd.*, 25 Ariz. App. 312, 315 (1975) ("The law is well settled that in order to enjoin an anticipated nuisance, the nuisance must be highly probable."). Whether the Neighbors could prove a high probability of damage to their properties has no bearing on TMS' legal access claims. We thus see no abuse of discretion.

III.     *Attorney Fees and Costs on Appeal and Cross-Appeal*

¶37      TMS requests its attorney fees and costs incurred in this appeal and cross-appeal under A.R.S. §§ 12-1103 and 12-341.01(A). We decline because TMS is not the successful party in this court. *See* A.R.S. § 12-341.01(A) (authorizing a fee award to the "successful party"); *Scottsdale Mem'l Health Sys., Inc. v. Clark*, 164 Ariz. 211, 215 (App. 1990) ("It is within the trial court's discretion to determine whether to award attorney's fees to a party who has prevailed in a quiet title action and otherwise complied with the provisions of section 12–1103(B)."). As the prevailing party on appeal, the Neighbors are entitled to their costs upon compliance with ARCAP 21.

**CONCLUSION**

¶38      We reverse the superior court's judgment finding a common law dedication of the Easement for Roadway. Because we reverse on common law dedication, we also vacate the attorney fees and cost award to TMS on that claim. We remand to allow the court to address attorneys' fees related to the implied way of necessity claim.



AMY M. WOOD • Clerk of the Court
FILED:     AA

15