# STATE OF ARKANSAS *v.* STATE OF MISSISSIPPI.

## IN EQUITY.

No. 7, Original.　Argued March 3, 4, 1919.—Decided March 19, 1919.

Under Equity Rule 31, a replication *held* not required in order to put in issue the allegations of the answer. P. 41.

The act admitting Mississippi as a State describes the boundary as beginning "on the river Mississippi" and, after other courses, extending again "to the Mississippi river, thence up the same to the beginning"; the act admitting Arkansas describes the boundary as "beginning in the middle of the main channel of the Mississippi," thence along other courses, and back "to the middle of the main channel of the Mississippi river; thence up the middle of the main channel of the said river to the . . . point of beginning." *Held*, that the boundary between the two States as fixed by the acts was the middle of the main channel of navigation, and not a line equidistant from the banks of the river. P. 43. *Arkansas* v. *Tennessee*, 246 U. S. 158.

It does not appear that any specific agreement was entered into between the States of Mississippi and Arkansas, under the Joint Resolution of Congress of January 26, 1909, 35 Stat. 1161, author-

izing an agreement or compact "to fix the boundary line between said States, where the Mississippi River now, or formerly, formed the said boundary line," and to make mutual cessions of lands separated by changes in the river, settle jurisdiction as to offenses on the river, etc. P. 43.

The court finds no occasion in the constitutions, laws or decisions of the two States, or in acquiescence, and practices of the inhabitants of the disputed territory in recognition of another boundary, to depart from the principle which makes equality of navigation the controlling consideration in fixing the boundary between States separated by a navigable stream. P. 44.

In case of an avulsion, the boundary line is to be fixed at the middle of the main channel of navigation as it was just previous to the avulsion. P. 45.

The location of the disputed line will be left in the first instance to commissioners to be appointed by the court upon suggestions of counsel, with power to take further proofs as may be authorized by the interlocutory decree to be entered herein. P. 47.

THE case is stated in the opinion.

Mr. Herbert Pope, with whom Mr. John D. Arbuckle, Attorney General of the State of Arkansas, Mr. John M. Moore and Mr. Albert M. Kales were on the brief, for plaintiff.

Mr. Garner W. Green, with whom Mr. Ross A. Collins, Attorney General of the State of Mississippi, Mr. Gerald Fitzgerald, Mr. George F. Maynard and Mr. Marcellus Green were on the brief, for defendant.

MR. JUSTICE DAY delivered the opinion of the court.

This is a suit brought to determine a portion of the boundary line between the States of Arkansas and Mississippi. It appears that at the place in dispute the Mississippi River formerly had its course from Friar's Point in a southwesterly direction, then made a turn to the south, flowing in a southerly direction, then a turn towards the

west in the shape of a half moon, then a sharp turn to the north and flowing northerly, and thence westerly, making a bend in the river in the shape of a horseshoe, which was known as Horseshoe Bend. It is averred in the bill, that in 1848 the river suddenly left its course and ran westerly across the points of the bend, cutting off a tract of land which has become known as Horseshoe Island. The answer avers that this avulsion occurred in 1842; but the exact date is immaterial. That it did occur is clearly established, and it is generally spoken of in the testimony as happening in 1848. We may say preliminarily that we find no substance in the contention of the respondent that the allegations of the answer must be taken as true for want of replication. Under new Equity Rule 31 in a case of this character no replication is required in order to make the issues.

The State of Arkansas contends that the old course of the river before the avulsion was within a body of water now known as Horseshoe Lake or Old River, a body of water of considerable length and depth. The State of Mississippi contends that the old river ran through a body of water still remaining, but considerably further to the north, and known as Dustin Pond, and that before the avulsion the course of the river on the upper side of the Bend was considerably to the westward of the course claimed by Arkansas, and ran where now there is a slough not far from the middle of Horseshoe Island. These diverse claims are illustrated by an examination of the map, exhibit A, attached to the bill.

As we view the case it is practically controlled by the decision of this court in *Arkansas* v. *Tennessee*, 246 U. S. 158. In view of that decision we are relieved of the necessity of a discussion in detail of much that is urged upon our attention now. Arkansas was admitted to the Union June 23, 1836 (5 Stat. 50, 51) by an act of Congress which as to its boundaries provided:

"Beginning in the middle of the main channel of the Mississippi river, on the parallel of thirty-six degrees north latitude, running from thence west, with the said parallel of latitude, to the Saint Francis river, thence up the middle of the main channel of said river to the parallel of thirty-six degrees thirty minutes north; from thence west to the southwest corner of the State of Missouri; and from thence to be bounded on the west, to the north bank of Red river, by the lines described in the first article of the treaty between the United States and the Cherokee nation of Indians west of the Mississippi, made and concluded at the city of Washington, on the 26th day of May, in the year of our Lord one thousand eight hundred and twenty-eight; and to be bounded on the south side of Red river by the Mexican boundary line, to the northwest corner of the State of Louisiana; thence east with the Louisiana State line, to the middle of the main channel of the Mississippi river; thence up the middle of the main channel of the said river to the thirty-sixth degree of north latitude, the point of beginning."

Mississippi had previously been admitted to the Union by an act of Congress April 3, 1818, (3 Stat. 348), which provided:

"Beginning on the river Mississippi at the point where the southern boundary line of the state of Tennessee strikes the same, thence east along the said boundary line to the Tennessee river, thence up the same to the mouth of Bear Creek, thence by a direct line to the northwest corner of the county of Washington [Alabama], thence due south to the Gulf of Mexico, thence westwardly, including all the islands within six leagues of the shore, to the most eastern junction of Pearl river with Lake Borgne, thence up said river to the thirty-first degree of north latitude, thence west along the said degree of latitude to the Mississippi river, thence up the same to the beginning."

It will be observed that the language of the Mississippi act, so far as now important to consider, fixes the boundary upon the Mississippi River as "up the same to the beginning," and the language of the Arkansas act is: "beginning in the middle of the main channel of the Mississippi river . . . . thence east, with the Louisiana State line, to the middle of the main channel of the Mississippi river, thence up the middle of the main channel of the said river to the thirty-sixth degree of north latitude, the point of beginning."

The State of Arkansas contends that these acts of Congress fix the middle of the channel of navigation as it existed before the avulsion as the boundary line between the States. By the State of Mississippi it is contended that the boundary line is a line equidistant from the well defined banks of the river. Language to the same effect as that contained in the acts of admission now before us was before this court in the case of *Arkansas* v. *Tennessee, supra,* and in that case the subject was considered, and the meaning of the Arkansas act, and similar language in the act admitting the State of Tennessee, was interpreted. The rule laid down in *Iowa* v. *Illinois,* 147 U. S. 1, was followed, and it was held that where the States of the Union are separated by boundary lines described as "a line drawn along the middle of the river," or as "the middle of the main channel of the river," the boundary must be fixed at the middle of the main navigable channel, and not along the line equidistant between the banks. We regard that decision as settling the law, and see no reason to depart from it in this instance.

It is urgently insisted that the laws and decisions of Arkansas and Mississippi are to the contrary, and our attention is called to Joint Resolution of Congress of 1909, 35 Stat. 1161, which provides:

"That the consent of the Congress of the United States is hereby given to the States of Mississippi and Arkansas

to enter into such agreement or compact as they may deem desirable or necessary, not in conflict with the Constitution of the United States, or any law thereof, to fix the boundary line between said States, where the Mississippi River now, or formerly, formed the said boundary line and to cede respectively each to the other such tracts or parcels of the territory of each State as may have become separated from the main body thereof by changes in the course or channel of the Mississippi River and also to adjudge and settle the jurisdiction to be exercised by said States, respectively, over offences arising out of the violation of the laws of said States upon the waters of the Mississippi River." Approved January 26, 1909.

No specific agreement appears to have been entered into under this act; but it is insisted that Arkansas and Mississippi by their respective constitutions have fixed the boundary line, as it is now claimed to be by the State of Mississippi, and that such boundary line has become the true boundary of the States irrespective of the decision of this court in *Iowa* v. *Illinois, supra,* followed in *Arkansas* v. *Tennessee, supra.* We have examined the constitutions and decisions of the respective States, and find nothing in them to change the conclusions reached by this court in determining the question of boundary between States. A similar contention was made in *Arkansas* v. *Tennessee* as to the effect of the Arkansas and Tennessee legislation and decisions, and the contention that the local law and decisions controlled in a case where the interstate boundary was required to be fixed, under circumstances very similar to those here presented, was rejected. In that case the Arkansas cases, which are now insisted upon as authority for the respondent's contention, were fully reviewed. The Mississippi cases called to our attention, of which the leading one seems to be *The Steamboat Magnolia* v. *Marshall,* 39 Mississippi, 109, as well as the legislation of the

State, seem to sustain the claim that local jurisdiction and right of soil to the middle of the river, is fixed by a line equidistant from the banks. But whatever may be the effect of these decisions upon local rights of property or the administration of the criminal laws of the State, when the question becomes one of fixing the boundary between States separated by a navigable stream, it was specifically held in *Iowa* v. *Illinois, supra,* followed in later cases, that the controlling consideration is that which preserves to each State equality in the navigation of the river, and that in such instances the boundary line is the middle of the main navigable channel of the river. In *Arkansas* v. *Tennessee, supra,* p. 171, we said: "The rule thus adopted, [that declared in *Iowa* v. *Illinois*] known as the rule of the ' thalweg,' has been treated as set at rest by that decision. *Louisiana* v. *Mississippi,* 202 U. S. 1, 49; *Washington* v. *Oregon,* 211 U. S. 127, 134; 214 U. S. 205, 215. The argument submitted in behalf of the defendant State in the case at bar, including a reference to the notable recent decision of its Supreme Court in *State* v. *Muncie Pulp Co.* (1907), 119 Tennessee, 47, has failed to convince us that this rule ought now, after the lapse of twenty-five years, to be departed from."

We are unable to find occasion to depart from this rule because of long acquiescence in enactments and decisions, and the practices of the inhabitants of the disputed territory in recognition of a boundary, which have been given weight in a number of our cases where the true boundary line was difficult to ascertain. (See *Arkansas* v. *Tennessee, supra,* and the cases cited at p. 172.)

This record presents a clear case of a change in the course of the river by avulsion, and the applicable rule established in this court, and repeatedly enforced, requires the boundary line to be fixed at the middle of the channel of navigation as it existed just previous to the avulsion. The location and determination of such bound-

ary is a matter which we shall leave in the first instance to a commission of three competent persons to be named by the court upon suggestion of counsel, as was done in *Arkansas* v. *Tennessee*. See 247 U. S. 461. This com-. mission will have before it the record in this case, and such further proofs as it may be authorized to receive by an interlocutory decree to be entered in the case. Counsel may prepare and submit the form of such decree.