356 F.2d 607
 Charles B. SHERRILL, Mary Y. Sherrill, William L. LaFollette
and Suzanne H. LaFollette, dba Sherrill &
LaFollette, Appellants,
v.
Frank B. McSHAN, Maggie L. McShan, his wife, et al., Appellees.
UNITED STATES of America, Appellant,
v.
Frank B. McSHAN, Maggie L. McShan, his wife, et al., Appellees.
 No. 19812.
 United States Court of Appeals Ninth Circuit.
 Feb. 4, 1966.
 
 Powers & Rehnquist, William H. Rehnquist, Phoenix, Ariz., for appellants.
 Lewis, Roca, Scoville, Beauchamp & Linton, John P. Frank, Elsing & Crable, William T. Elsing, Phoenix, Ariz., J. Edward Williams, Acting Asst. Atty. Gen., William P. Coppel, U.S. Atty., Phoenix, Ariz., Roger P. Marquis, Richard N. Countiss, Dept. of Justice, Washington, D.C., for appellees.
 Before JERTBERG and DUNIWAY, Circuit Judges, and THOMPSON, District judge.
 JERTBERG, Circuit Judge:
 
 
 1
 Before us is an appeal in a quiet title action by the individual parties appellants (plaintiffs in the district court) and by appellant, United States of America (intervenor in the district court), from a judgment of the United States District Court for the District of Arizona dismissing the amended complaint of the individual parties appellants, the complaint in intervention of the intervenor, and the counterclaim of the appellees (defendants in the district court) on the ground that the district court had no jurisdiction to enter a decree in the action quieting title to any party to any of the lands in question, for the reason that all of the lands in question are and were at the time of the institution of the action located in the State of California. The district court filed no opinion but caused to be made and entered findings of fact, conclusions of law, and judgment.
 
 
 2
 Jurisdiction in the district court is founded upon diversity of citizenship, 28 U.S.C. 1332, the individual appellants being citizens of the State of Arizona, and the appellees, citizens of the State of California.
 
 
 3
 In the action as originally filed in the district court, the individual appellants were the plaintiffs and four of the eighteen appellees were the defendants. The United States of America was not a party to the action. Following trial to the court, the district court found that the necessary requirements of diversity jurisdiction were present, found that the land in issue lay in the State of Arizona, and entered judgment quieting title in the inidvidual parties appellants. The four appellees who were parties to the action at that time appealed to this court in McShan v. Sherrill, 283 F.2d 462 (9th Cir. 1960). In that case the judgment of the district court was vacated and the cause remanded to that court with instructions, among others, that appellees be given an opportunity to join any persons owning or claiming title to property which their complaint alleges accreted to their land, and upon such joinder that appellants' motion for a new trial be granted.
 
 
 4
 Following remand to the district court that court granted a new trial. The original plaintiffs filed an amended complaint in which fourteen additional parties were named as defendants, and in which it was also alleged that they likewise were residents of the State of Arizona. Prior to the second trial the United States of America intervened in the action claiming ownership in portions of the land involved in the action.
 
 
 5
 Following a fairly lengthy trial to the court in which lay and expert witnesses testified for the various parties, and in which many maps and other documents were received in evidence, the district court entered findings of fact, among which are the following:
 
 
 6
 'FINDINGS OF FACT
 
 
 7
 '1. * * * '2. * * * '3. * * * '4. In 1883, the Colorado River adjacent to the lands in question in this case occupied a single channel, as shown by the General Land Office meander of the west bank of the River in that year (Plaintiffs' Exhibit 7 in Evidence); and at that time the tracts of land which were ultimately conveyed to defendants Monaghan and Murphy Company, Calnevari Corporation, McShan and Kerr were located west of the west bank of the River, in California. Beginning in 1884 and continuing to the year 1912, the River slowly moved east opposite such tracts by the process of erosion and deposition known in law as accretion, adding to such tracts as the River moved. In 1912, the main channel of the River was in the location shown on Plaintiffs' Exhibit 21-A In Evidence for the channel labeled 'Colorado River.' At that time, the lands in controversy in this case all lay to the west of such main channel. '5. Subsequent to its movement to the east as described in Paragraph 4, the River in the area involved in this case rechanneled itself or cut off to a point west of the location of the main channel in 1912 as described in Paragraph 4. A change in the point of approach of the upstream River to the area involved herein, brought about a gradual increase of the proportion of the volume of the River flowing through the western body of water shown on Plaintiffs' Exhibit 21-A and a gradual decrease in the volume flowing through the channel labeled 'Colorado River' on Plaintiffs' Exhibit 21-A. By the mid-1920's, the increase in the proportion of the volume of the River flowing through the western channel and the silting of the eastern channel had progressed to the extent that the eastern channel carried flows of water only during high water periods; but the rechannelization was not completed until about 1935. '6. The River in the period 1912-1935 did not change its channel by creeping over the lands between the eastern and western channels, as they existed in 1912, but by a change in flow of the River so that it ran in the western channel around such lands.'
 
 
 8
 and the following conclusions of law and judgment:
 
 
 9
 'CONCLUSIONS OF LAW
 
 
 10
 '1. The boundary between the States of Arizona and California in the area in question in this case is the mid-line of the main channel of the Colorado River as such channel was located in 1912. '2. All of the lands in question in this case are, and were at the time of institution of this action, located in the State of California. '3. This Court has no jurisdiction to enter a decree in this action quieting title in any party to any of the lands in question. '4. The Second Supplemental Amended Complaint of plaintiffs, the Complaint in Intervention of intervenor, and the Counterclaim of defendants must be dismissed. '5. Each party shall bear his own costs.
 
 
 11
 'JUDGMENT
 
 
 12
 'Now on this 17 day of August, 1964,
 
 
 13
 'IT IS ORDERED AND ADJUDGED that the Second Supplemental Amended Complaint of plaintiffs is dismissed; that the Complaint in Intervention of intervenor is dismissed; that the Counterclaim of defendants is dismissed; and that each party to this cause shall bear his own costs.'While the appellants and the intervenor specify several errors of the district court, some of which will be later considered, we should state that we are not concerned on this appeal with questions of ownership of, or title to, the real property involved in this case or the conflicting claims of title thereto asserted by the respective parties to this appeal. The district court expressly declared that it was without jurisdiction to do so.
 
 
 14
 The ultimate legal issue before us is one of the territorial jurisdiction of the United States District Court of Arizona. No party contends on this appeal that such district court has jurisdiction to issue a decree to any party quieting title to any real property lying and being elsewhere than in the State of Arizona. See Durfee v. Duke, 375 U.S. 106, at page 108, 84 S.Ct. 242, at page 243, 11 L.Ed.2d 186 (1963) (an action to quiet title to real property), where the court stated: 'The Nebraska court had jurisdiction over the subject matter of the controversy only if the land in question was in Nebraska.' A Federal court sitting in a diversity case operates as an adjunct to the state court. Littell v. Nakai, 344 F.2d 486 (9th Cir. 1965).
 
 
 15
 The district court concluded that all of the lands in question in this case are and were at the time of the institution of this action located in the State of California, and that it had no jurisdiction to enter a decree in the action quieting title in any party to any of the lands in question.
 
 
 16
 The lands in question were and are located along the east side of the Colorado River, north of Needles, California. Arizona became the forty-eighth state and was admitted into the Union on February 14, 1912.
 
 
 17
 The underlying task of the district court was to determine the boundary line between California and Arizona in order to fix its territorial jurisdiction. The Constitution of Arizona defines the western boundary of that state as running: '* * * thence down the midchannel of said Colorado River * * *.' The Constitution of California defines the eastern boundary of that state as running: '* * * thence down the middle of the channel of said (Colorado) river * * *.'
 
 The district court concluded that:
 
 18
 'The boundary between the States of Arizona and California in the area in question in this case is the mid-line of the main channel of the Colorado River as such channel was located in 1912.'
 
 
 19
 The principles of law defining the point at which the jurisdiction of two states separates, where the boundary between then is a navigable river, appears to be well-settled. In the instant case the Constitutions of the two states provide, in almost identical language, that the boundary between the two states is the middle of the channel of the Colorado River. The rule laid down in Iowa v. State of Illinois, 147 U.S. 1, 13 S.Ct. 239, 37 L.Ed. 55 (1893) is that the boundary line in the instant case must be fixed at the middle of the main channel of the Colorado River and not along the line equi-distant between the banks of that river. See also State of Arkansas v. State of Tennessee, 246 U.S. 158, 38 S.Ct. 301, 62 L.Ed. 638 (1918); State of Arkansas v. State of Mississippi, 250 U.S. 39, 39 S.Ct. 422, 63 L.Ed. 832 (1919).
 
 
 20
 'When the bed and channel are changed by the natural and gradual processes known as erosion and accretion, the boundary follows the varying course of the stream; while if the stream from any cause, natural or artificial, suddenly leaves its old bed and forms a new one, by the process known as an avulsion, the resulting change of channel works no change of boundary, which remains in the middle of the old channel, although no water may be flowing in it, and irrespective of subsequent changes in the new channel.' State of Arkansas v. State of Tennessee, supra, 246 U.S. at p. 173, 38 S.Ct. at p. 304.
 
 
 21
 It appears to us that the district court endeavored to apply the foregoing principles in fixing the point in the Colorado River which ended the territorial jurisdiction of the district court.
 
 
 22
 The appellants and intervenors severely attack the findings of fact of the district court supporting the conclusions reached by it, claiming that the findings were without evidentiary support, or, in the alternative, if supported by evidence that the conclusions drawn by the district court were without legal foundation, and attacking the credence placed by the district court in the testimony of an expert witness who testified on behalf of appellees, and in relying upon government maps and surveys which were received in evidence by stipulation of the parties.
 
 
 23
 An examination of the record indicates to us that none of the district court's findings is totally unsupported by the evidence. Conflicting evidence was resolved by the district court. Its findings are reasonably supported by substantial evidence, and we are in no position to say that any one of them is clearly erroneous. In these circumstances such findings must be upheld. Beaver v. United States, 350 F.2d 4 (9th Cir. 1965).
 
 
 24
 Appellants contend that the district court erred:
 
 
 25
 1. By the exclusion of the testimony of the witness, Householder, given at the first trial;
 
 
 26
 2. In failing to find that a boundary line had been established by continued acquiescence since 1936; and
 
 
 27
 3. In excluding a map indicating proposed boundary line adopted by the California-Arizona Boundary Commission.
 
 
 28
 We find no abuse of discretion on the part of the district judge in excluding the transcript of Householder's testimony given at the first trial, or in excluding the Boundary Commission Map. In our view the evidence was wholly insufficient to compel a finding by the district court that a boundary line in the area of the real property in question was established by acquiescence.
 
 
 29
 The judgment of the district court dismissing the action for lack of jurisdiction over the subject matter of the action is affirmed.