**ANDERSON–TULLY COMPANY et al.,**
**Plaintiffs,**

v.

**Willis FRANKLIN and W. W. Dark,**
**Defendants.**

**No. DC 6729.**

United States District Court
N. D. Mississippi,
Delta Division.

Dec. 18, 1969.

M. E. Ward, Vicksburg, Miss., W. H. Daggett, Marianna, Ark., R. L. Dent, Jr., Vicksburg, Miss., for plaintiffs.

Charles B. Roscopf, Helena, Ark., Stovall Lowrey, Clarksdale, Miss., Jack N. Tucker, Tunica, Miss., for defendants.

## MEMORANDUM OPINION

ORMA R. SMITH, District Judge.

This case has been tried to the Court, without a jury, and is submitted on the evidence introduced at the hearing, as shown by the reporter's notes, the entire record herein, and proposed findings of fact and conclusions of law submitted by counsel.

The action was instituted by plaintiffs in the United States District Court for the Northern District of Mississippi, Delta Division. Plaintiff Anderson-Tully Company is a corporation organized and existing under and by virtue of the laws of the State of Michigan, and has its principal place of business in the City of Memphis, Shelby County, Tennessee. The other plaintiffs are Leo H. McGee, Dorothy McGee Taylor and Julia McGee, adult resident citizens of the State of Mississippi.

The defendants are Willis Franklin and W. W. Dark, adult resident citizens of the State of Arkansas.

Plaintiff Corporation claims to be the owner in fee of all of fractional Section 5, Township 24 North, Range 8 West, Bolivar County, Mississippi, and accretions thereto. The remaining plaintiffs claim to be the owners of Lot 15 and accretions thereto and the accretions to Lots 16 and 22 in Section 4, Township 24 North, Range 8 West, in Bolivar County, Mississippi.

The defendants, Franklin and Dark, claim to be the owners of the following described land said to be situated in Desha County, Arkansas, to-wit:

East half of the Southwest quarter (E½ SW¼) of Section 30, Township 8 South, Range 1 East.

Frl. East half (Frl. E.½) of Section 30, Township 8 South, Range 1 East. Frl. Northwest quarter (Frl. NW¼) of Section 30, Township 8 South, Range 1 East.

Defendant Franklin claims to be the owner of the following described land said to be situated in Desha County, Arkansas:

Northeast quarter of the Northeast quarter (NE¼ NE¼) of Section 25, Township 8 South, Range 1 West.

The land involved is situated along the Mississippi River as it runs between the States of Arkansas and Mississippi.

The Government's original survey shows the Mississippi land to be situated east of the river and the Arkansas land to be situated west of the river.

The shifting of the thalweg of the river, at the place where the land is situated, has brought about a dispute between the parties as to the ownership of a mass of land presently situated at the distal end of a peninsula, known as "Smith Point". The bend in the river at this point is known as "Scrubgrass Bend". Plaintiffs brought this action to quiet title to the land in dispute.

The parties have stipulated that if the land is located within the territorial limits of the State of Mississippi, as plaintiffs contend, the land belongs to plaintiffs, otherwise it belongs to defendants.

The issue thus presented is whether the boundary line between the States of Mississippi and Arkansas runs along the thalweg of the river as it presently runs, as plaintiffs contend, or whether the line runs along a depression said to be the old river run, which traverses Smith Point from Northwest to Southeast some distance East of the distal end of Smith Point, as defendants contend.

The defendants contend that the West bank on the Arkansas side of the river washed away and caved during the period 1935 to 1942, in the area including Section 30, Township 8 South, Range 1 East, Desha County, Arkansas, in such a rapid, violent and perceptible manner as to constitute an avulsion; that the boundary line between the two states remained the same as before the avulsion, i. e., the center of the thalweg of the river as it existed in 1937, that the thalweg of the river in 1937 ran along the depression aforesaid, and that the said land, being West of the depression, is situated within the State of Arkansas.

Plaintiffs, on the other hand, contend that the land became a part of Smith Point by the gradual process of erosion on the Arkansas side of the river and accretion on the Mississippi side thereof and is therefore situated within the State of Mississippi.

Defendants concede that if the land is situated within the State of Mississippi they have no title to the land.

Plaintiffs concede that if the land is situated within the State of Arkansas they have no title thereto.

It is, therefore, incumbent upon the Court to determine the true boundary line between the States of Mississippi and Arkansas at Smith Point and Scrubgrass Bend.

There is no dispute in regard to the substantive law applicable to the case. The parties are in agreement with regard thereto.

The governing rules of substantive law applicable to the case are:

1) The boundary line between the State of Mississippi and the State of Arkansas is "fixed at the middle of the main navigable channel, and not along the line equidistant between the banks", Arkansas v. Mississippi, 250 U.S. 39, 39 S.Ct. 422, 63 L.Ed. 832, 834. See also Iowa v. Illinois, 147 U.S. 1, 13 S.Ct. 239, 37 L.Ed. 55; Louisiana v. Mississippi, 202 U.S. 1, 26 S.Ct. 408, 50 L.Ed. 913; New Jersey v. Delaware, 291 U.S. 361, 54 S.Ct. 407, 78 L.Ed. 847.

2) Where there has been a change in the course of the river by avulsion, the applicable rule of law "requires the boundary line to be fixed at the middle of the channel of navigation as it existed just previous to the avulsion", Arkansas v. Mississippi, supra, at page 835, 39 S.Ct. at page 424, 63 L.Ed. 832; Arkansas v. Tennessee, 1918, 246 U.S. 158, 38 S.Ct. 301, 62 L.Ed. 638; Missouri v. Nebraska, 1904, 196 U.S. 23, 25 S.Ct. 155, 49 L.Ed. 372.

3) "Avulsion is a change in a boundary stream so rapidly or so suddenly made, or in such a short time, that the change is distinctly perceptible or measurably visible at the time of its progress. Or to state it otherwise, so far as concerns practical purposes, when the change is not by accretion, it is by avulsion." Sharp v. Learned, 1943, 195 Miss. 201, 14 So.2d 218, 220. In Missouri v. Nebraska, 1904, 196 U.S. 23, 25 S.Ct. 155, 49 L.Ed. 372, 375, the Supreme Court of the United States said: "In the latter

case, the court, after referring to the rule announced in New Orleans v. United States, [10 Pet. 662, 9 L.Ed. 573], and citing prior cases in which that rule has been recognized, said: 'It is equally well settled that where a stream which is a boundary, from any cause suddenly abandons its old and seeks a new bed, such change of channel works no change of boundary; and that the boundary remains as it was, in the center of the old channel, although no water may be flowing therein. This sudden and rapid change of channel is termed, in the law, avulsion. In Gould, Waters, § 159, it is said: "But if the change is violent and visible and arises from a known cause, such as a freshet, or a cut through which a new channel is formed, the original thread of the stream continues to mark the limits of the two estates" ' ".

4) "When grants of land border on running water, and the banks are changed by that gradual process known as 'accretion,' the riparian owner's boundary line still remains the stream, although, during the years, by this accretion, the actual area of his possessions may vary". Nebraska v. Iowa, 1892, 143 U.S. 359, 12 S.Ct. 396, 36 L.Ed. 186, 187. See also Mayor, Aldermen & Inhabitants of New Orleans v. United States, 35 U.S. 662, 10 Pet. 662, 717, 9 L. Ed. 573; Missouri v. Nebraska, 196 U.S. 23, 25 S.Ct. 155, 49 L.Ed. 372 [1]; Arkansas v. Tennessee, supra.

5) "Accretion or alluvion is an addition to riparian land made by the water to which the land is contiguous, so gradually and imperceptibly that, though the witnesses may see from time to time that progress has been made, they could not perceive it while the process was going on." Sharp v. Learned, supra, 195 Miss. page 220, 14 So.2d page 220.

The record reflects a chain of title to Section 5, Township 24 North, Range 8 West, Bolivar County, Mississippi, through which Anderson-Tully acquired its title to the lands in 1898, 1900 and 1902.

The McGees acquired title to the property above described in Lot 15, and accretions to Lots 16 and 22, Section 4, Township 24 North, Range 8 West, Bolivar County, Mississippi, through the Estate of Dottie O. McGee on May 16, 1964. Dottie O. McGee acquired the title to Lot 15, in 1925, and title to the accretions to Lots 16 and 22, in 1941.

Franklin and Dark acquired title to East One-half Southwest One-Quarter (E½ SW¼) Section 30, Township 8 South, Range 1 East, Desha County, Arkansas, on November 14, 1966, through a deed from the State of Arkansas, which recites that the State acquired title thereto as a result of the forfeiture and non-payment of taxes for the year 1922. They acquired title to Frl. East Half and Frl. Northwest Quarter of said Section 30, on November 14,

---

1. In *Missouri* the Supreme Court said: "In New Orleans v. United States, 10 Pet. 662, 717, 9 L.Ed. 573, 594, argued elaborately by eminent lawyers, Mr. Webster among the number, this court said: 'The question is well settled at common law, that the person whose land is bounded by a stream of water, which changes its course gradually by alluvial formations, shall still hold by the same boundary, including the accumulated soil. No other rule can be applied on just principles. Every proprietor whose land is thus bounded is subject to loss by the same means which may add to his territory; and as he is without remedy for his loss, in this way, he cannot be held accountable for his gain.' It was added—

what is pertinent to the present case— that 'this rule is no less just when applied to public than to private rights.'

\* \* \* \* \*

These propositions, which are universally recognized as correct where the boundaries of private property touch on streams, are in like manner recognized where the boundaries between states or nations are, by prescription or treaty, found in running water. Accretion, no matter to which side it adds ground, leaves the boundary still the center of the channel. Avulsion has no effect on boundary, but leaves it in the center of the old channel." 196 U.S. 23, 25 S.Ct. 157, 49 L.Ed. 375.

1966, through a deed from the State of Arkansas which recites that the State acquired title thereto as the result of the forfeiture and non-payment of taxes for the year 1906.

Franklin acquired title to the Northeast Quarter of the Northeast Quarter, Section 25, Township 8 West, Range 1 West, Desha County, Arkansas, from the State of Arkansas which recites that the State acquired title thereto as the result of the forfeiture and non-payment of taxes for the year 1914. Title to the land was acquired October 6, 1967.

The parties submitted extensive evidence to the Court on the trial of the issues, including numerous maps, plats, aerial photographs and other documents. It is not necessary for the Court, in this opinion, to discuss in detail the evidence so presented. All of it is shown in the reporter's notes and the exhibits introduced by the parties. A summary thereof will suffice.

The plaintiffs introduced a qualified expert potamologist, who had been engaged by them to examine the 1820–1968 bank caving (erosion) and bar building (accretion) actions and the thalweg—navigation course movements of the Mississippi River in the lower arm of the river meander looping Smith Point, Mississippi, Peninsula and determine the limits of the accretions to the plaintiffs' riparian land. At the time of the 1830–34 United States land surveys these respective riparian Mississippi lands were located on the North (left descending) bank of the Mississippi River and the riparian Arkansas lands were located on the opposite and South (right descending) bank of the Mississippi River. This witness, after a study of all available official and private plats, aerial photographs, aerial mosaics, light lists, land surveys, hydrographic survey maps and other report material dating back to 1820, and a field inspection of the problem area, concluded that since 1830–34, the Mississippi River looping the Smith Point Peninsula, has, by the natural processes of bank caving and bar

building, meandered Northward and Westward from its 1830–34 position to its 1968 location; that, as a consequence of such natural action of the river, the geographical area formerly occupied by the land conveyed to defendants by the State of Arkansas originally situated on the right descending bank of the river is now occupied by the land subsequently formed on the left descending bank of the river, as accretions to the land of plaintiffs; and, that there was no avulsive action of the river, nor any land formations in the river channel, per se, within the problem area.

Plaintiffs introduced a witness who had worked on boats plying the river for many years. His experience with the river began in 1924. He was engaged as a Pilot in 1926, a Master in 1934, and retired from the river in 1965, after many years of service. The gist of his testimony is that during the period of his service on the river navigation in Scrubgrass Bend was always hard against the Arkansas bank, and at no time did he encounter an island formation within the reach of Montgomery Point (Arkansas) and Smith Point (Mississippi). The testimony of this witness supports the conclusion reached by the potamologist from his study of the river.

Plaintiffs used two qualified foresters as witnesses in the case. They concluded, from their investigation and study of the vegetation on the disputed area, that the growth of timber was of recent origin. They made a study of the timber situated East of the depression across Smith Point. From this study they concluded that the timber growth thereon was much older than the growth West of the depression. Their study reflected that the age of trees on the East side of the depression ranged from thirty-three to one hundred years, while those on the West side ranged from sixteen to twenty years. There was introduced into evidence the deposition of a Professor of Wood Technology in North Carolina State University. This witness appeared to be a qualified expert in the field of wood products and the determination of

the age of trees from the counting of annual rings therein. A sample of a cross section of a tree cut from the land in dispute was examined by this witness. His testimony in regard thereto substantiates the opinion of the two foresters who testified at the hearing.

There were other witnesses introduced by plaintiffs. It is unnecessary to discuss the nature or effect of their testimony, except to say that the evidence introduced through these witnesses sustains the plaintiffs' position in the case.

In order to support their theory that an avulsion occurred in Scrubgrass Bend during the period 1937–1942, defendants introduced surveys, maps, plats, aerial photographs, pictures of the aforesaid depression and growth of timber on the disputed area, as well as testimony from experts and others conversant with the problem area.

The depression across Smith Point, which defendants claim constitutes the old river channel, where the thalweg of the river existed in or about 1937, is shown by a survey introduced in evidence. The depression runs a Northwesterly and Southeasterly course across the point. The evidence reflects that the width of the depression ranges from approximately fifty feet at the upper end to three or four hundred feet at the lower end; that the depression has banks on each side which are abrupt, steep and visible; and that, at times, water runs through and stands in the depression. There is evidence in the case that the river at this point is in excess of three quarters of a mile wide.

Defendants also introduced an expert forester who made a survey of the disputed land and took increment borings from several trees situated there. From a study of the trees, the surrounding area, and the borings from the trees, he concluded that the age of the trees from which samples were taken ranged from fourteen to twenty-seven years. The testimony of this expert is in conflict with that of the expert foresters testi-

fying for plaintiffs. While the latter estimated the age of the trees to be from sixteen to twenty years, the former's estimate was from fourteen to twenty-seven years.

The defendant Dark and several witnesses who visited the problem area on numerous occasions during the period from 1935 to 1945, testified as to the existence of an island or towhead in the river off Smith Point. These witnesses did not own property situated in this area but visited it during this period for various purposes.

The testimony of these witnesses must be considered in light of the fact that there was no personal reason for them to focus their attention on the area, so as to enable them to recall and remember the situation of the island and other details of the area after approximately thirty years. One of the witnesses was seventeen years of age, when he first came into contact with the area. Another testified that in the late thirties he witnessed a steamboat coming down the Arkansas side of the channel, and that during low water the steamboats navigated the river on the Arkansas side of the island, but during high water they would navigate the river on the Mississippi side of the island.

Defendants introduced a consulting Civil Engineer who made a study of a number of maps of the river during and before the period in question, and testified as to his conclusions drawn therefrom. It was his opinion that there had been a sudden change in the thalweg of the river to the Arkansas side, during the period in question.

▇ Defendant introduced evidence to show that during the period 1937 to 1942, the Arkansas bank of the river caved in perceptibly and large portions of the bank, with all vegetation and structures thereon, caved into the river. It is said by defendants that such action did not take place slowly or imperceptibly; but, on the contrary, the caving in and washing away of the Arkansas land was

rapid, violent, and perceptibly in its progress; and that the great flood of 1937 could well have been the initiating force that caused the violent gyrations of the river thereafter. Defendants contend that this evidence, along with the other evidence in the case, leads to the inescapable conclusion that during this period the thalweg of the river left the old channel and created or established a new one on the Arkansas side, thereby creating an island or towhead, which is the subject of this litigation. The extensive, rapid and violent caving in and washing away of a bank does not necessarily change the course of the channel or thalweg of the river. Nebraska v. Iowa, supra.[2]

Defendants also contend that the abrupt, steep and visible banks of the depression demonstrate clearly that the depression is in fact the dead thalweg of the river.

On the other hand plaintiffs assert that the depression is nothing more than a swale; that the East bank of the depression constitutes the bank of maximum recession, or a meander scar marking the furtherest point that the river caved away its banks before shifting its course downstream. The testimony of the potamologist sustains this contention.

The maps introduced in evidence as Plaintiffs' Exhibits 12 and 13, prepared by Allen and Shackelford, after a survey of the area in June 1941, show this bank of the depression to be the "old bank of river when caving stopped". Plaintiffs support their theory on this point with the testimony of the foresters to the effect that the land located on the East bank of the river is from sixty-five to one hundred and ten years of age, while the age of the land on the West side is of much younger vintage.

The contentions of the parties conflict. One is not compatible with the other.

The greater weight or clear preponderance of the evidence in the case compels the Court to find that the true boundary line between the States of Mississippi and Arkansas at Scrubgrass Bend and Smith Point is the live thalweg of the river, and that the land in dispute in this case is located within the territorial limits of the State of Mississippi.

### FINDINGS OF FACT

The Court finds the true facts in this case to be the following:

1) That plaintiff, Anderson-Tully Company, is a corporation chartered un-

---

2. In Nebraska, at 143 U.S. pages 369–370, 12 S.Ct. pages 399–400, 36 L.Ed. page 190, the court said:

"Notwithstanding this, two things must be borne in mind, familiar to all dwellers on the banks of the Missouri river, and disclosed by the testimony; that, while there may be an instantaneous and obvious dropping into the river of quite a portion of its banks, such portion is not carried down the stream as a solid and compact mass, but disintegrates and separates into particles of earth borne onward by the flowing water, and giving to the stream that color, which, in the history of the country, has made it known as the 'muddy' Missouri; and also that, while the disappearance, by reason of this process, of a mass of bank may be sudden and obvious, there is no transfer of such a solid body of earth to the opposite shore, or anything like an in-

stantaneous and visible creation of a bank on that shore. The accretion, whatever may be the fact in respect to the diminution, is always gradual, and by the imperceptible deposit of floating particles of earth.

\*     \*     \*     \*     \*

"Our conclusions are that, notwithstanding the rapidity of the changes in the course of the channel, and the washing from the one side and on to the other, the law of accretion controls on the Missouri river as elsewhere; and that not only in respect to the rights of individual land-owners, but also in respect to the boundary lines between states. The boundary, therefore, between Iowa and Nebraska is a varying line, so far as affected by these changes of diminution and accretion in the mere washing of the waters of the stream."

der the laws of the State of Michigan and has its principal place of business in Memphis, Shelby County, Tennessee; that Leo H. McGee, Dorothy McGee Taylor and Julia McGee are adult residents and citizens of the State of Mississippi; that defendants, Willis Franklin and W. W. Dark, are adult residents and citizens of the State of Arkansas; and that the matter in controversy exceeds, exclusive of interest and costs, the sum of Ten Thousand Dollars ($10,000.00);

2) That the deraignment of title to the lands in controversy to the respective parties is not controverted, plaintiffs claiming under a chain of title based on Mississippi conveyances and defendants claiming under deeds from the Commissioner of State Lands of the State of Arkansas, and by stipulation the sole question to be determined in connection with these titles is whether or not the lands are in the State of Arkansas or in the State of Mississippi;

3) That Anderson-Tully Company is the owner in fee of all of Section 5, Township 24 North, Range 8 West, Bolivar County, Mississippi and accretions thereto;

4) That Leo H. McGee, Dorothy McGee Taylor and Julia McGee are the owners of Lot 15 and accretions thereto and the accretions to Lots 16 and 22 in Section 4, Township 24 North, Range 8 West, Bolivar County, Mississippi;

5) That the aforesaid lands are located on the distal end of Smith Point, a peninsula surrounded on the north, west and south by the Mississippi River; that said lands were riparian to the Mississippi River at the time of the original Governmental Survey, as reflected by the General Land Office plat, and remained riparian to said river at all times subsequent thereto; that over the past 130 years the Mississippi River has migrated westward and southward caving away and destroying substantial portions of the Arkansas mainland; that in this process of caving and erosion all of Section 30, Township 8 South, Range 1 East, and the Northeast Quarter of the Northeast Quarter of Section 25, Township 8 South, Range 1 West, Desha County, Arkansas, as originally depicted on the GLO plats, was destroyed by caving into the river; that as the river migrated as aforesaid, alluvion was deposited against the banks of Smith Point, Mississippi, adjacent to the land of plaintiffs, and Smith Point, following the migration of the river, extended west and south passing over and occupying the geographical area originally surveyed as the Northeast Quarter of the Northeast Quarter of Section 25, Township 8 South, Range 1 West, and all of Section 30, Township 8 South, Range 1 East aforesaid; that this deposition of alluvion or accretions to the Mississippi bank was a gradual process and not avulsive in nature;

6) That an island or towhead did not begin or occur on the Arkansas side of the thalweg in the Mississippi River between Montgomery Point, Arkansas and Smith Point, Mississippi;

7) That the lands so eroded away, and described as the Fractional E½ of Section 30 and the Fractional NW¼ of Section 30, Township 8 South, Range 1 East, Desha County, Arkansas, on the tax records, were forfeited to the State of Arkansas for the year 1906, and the E½ SW¼ of Section 30, Township 8 South, Range 1 East, Desha County, Arkansas, was forfeited to the State of Arkansas for the non-payment of taxes for the year 1922, and NE¼ of the NE¼ of Section 25, Township 8 South, Range 1 West, Desha County, Arkansas was forfeited to the State of Arkansas for non-payment of taxes for the year 1914; that the above deeds covering the land situated in Section 30 were executed by the Commissioner of State Lands of the State of Arkansas on November 14, 1966, and the deed conveying the land in Section 25, on October 6, 1967, at which time said lands were no longer in existence.

## CONCLUSIONS OF LAW

1) This is a civil action under rules which include questions of law and equity. Rules 1 and 2, Federal Rules of Civil Procedure.

2) The Court has jurisdiction, the parties being citizens and residents of different states and the amount in controversy admittedly being in excess of $10,000.00, exclusive of interest and costs. 28 U.S.C. § 1332.

3) The boundary line between the State of Arkansas and the State of Mississippi is the thalweg or main channel of the Mississippi River, and when it is changed by natural and gradual processes known as erosion and accretion, the boundary follows the varying course of the stream. Arkansas v. Tennessee, supra.

4) When land along a navigable stream is washed away by the gradual action of the river, the land call is forever washed away, and a conveyance by such description thereafter is ineffective. Wyatt v. Griffin, 242 Ark. 562, 414 S.W.2d 337. Adkisson v. Starr, 222 Ark. 331, 260 S.W.2d 956.

5) That Anderson-Tully's title to Section 5, Township 24 North, Range 8 West, Bolivar County, Mississippi, shall be quieted in Anderson-Tully Company.

6) That Leo H. McGee, Dorothy McGee Taylor and Julia McGee's title to Lot 15 and accretions thereto and the accretions to Lots 16 and 22 in Section 4, Township 24 North, Range 8 West, Bolivar County, Mississippi, shall be quieted and confirmed.

7) That the above referred to deeds to Arkansas land are void and of no effect and shall be cancelled, set aside and held for naught as a cloud upon the title of plaintiffs.

A judgment carrying into effect the holding of the Court aforesaid, may be presented by counsel to the Court for entry, within ten days.