**Anna Mae SCHOTT, Plaintiff,**

v.

**CITY OF KINGMAN, an incorporated municipality, et al., Defendants.**

**No. Civ–1067.**

United States District Court,
D. Arizona.

Oct. 6, 1970.

Robert John Walton, Phoenix, Ariz., for plaintiff.

Harold E. Whitney, Phoenix, Ariz., for defendants.

### FINDINGS OF FACT CONCLUSIONS OF LAW AND JUDGMENT

CRAIG, District Judge.

Plaintiff, a resident of California, seeks to recover reimbursement for expenditures incurred in the construction of water lines which defendant, an incorporated municipality and a subdivision of the State of Arizona, is presently using to deliver water to individual users. Plaintiff prays for the reasonable value of the water lines under a theory of implied contract, or alternatively, unjust enrichment.

This Court's diversity jurisdiction is invoked under Title 28 U.S.C. § 1332. The claim is in excess of $10,000.

This matter was tried before the Court without a jury on June 19, 1970, in Prescott, Arizona. The matter was submitted for decision pending receipt of the parties' respective memoranda. The memoranda have been received and studied. The Court makes the following findings of fact and conclusions of law.

## FINDINGS OF FACT

1. Plaintiff and her husband[1] installed, during the years 1962–1965, water distribution lines in two subdivisions in Mohave County, Arizona, which are known as Shangri-La Estates and Kingman Country Club Addition.[2]

2. Shangri-La Estates and Country Club Addition lie outside the city limits of the City of Kingman, or at least they did for the time periods relevant herein.

3. At the time of installation of the water lines there was no approved water supply other than that afforded by the City of Kingman. Furthermore, the State of Arizona required that water must be made available before plaintiff's lots could be sold. Plaintiff and her husband were aware of this requirement.

4. The water lines were laid in the streets and followed minimum specifications required by the City of Kingman in accordance with the standards of the State Health Department. These specifications included a requirement that certain portions of the system be a larger size than was needed for plaintiff's lots in order to facilitate future extension of the system by the City of Kingman. The City Engineer of the City of Kingman inspected the work to insure compliance with specifications, but the actual supervision of the construction was performed by the general contractor responsible for installation of the water lines.

5. Subsequent to installation of the water lines, the system was turned over to the City of Kingman for maintenance. Accordingly, the city considered the lines to be part of the city's water distribution system and further considered ownership of the lines to be in the city. Defendants never inquired as to the cost of installing the lines, nor have the lines been carried by the city as an asset.

6. Subsequent to turning the water lines over to the City of Kingman for maintenance, a written demand for compensation was made by plaintiff and refused by defendant City of Kingman.

7. No written agreement exists between plaintiff and defendant City of Kingman concerning the payment of any sum for the installation of the water lines. Although plaintiff testified that she and her late husband thought they "should be" compensated for their expenditures, there is no evidence to indicate that defendants told plaintiff that the latter would be compensated, or that the city actually intended to reimburse them, or that plaintiff and her husband really anticipated reimbursement at the time the water lines were installed. The most that the evidence shows is that after the water lines had been installed plaintiff and her husband felt that the City of Kingman should be responsible for installing the lines and they so informed the city through its employees.

8. The evidence indicates that the sales prices of the lots in Shangri-La Estates and Country Club Addition were not increased to absorb the cost of the water lines.

9. The out-of-pocket cost to plaintiff and her husband of installing the water distribution system at Shangri-La Estates and Country Club Addition was $21,706.33. Plaintiff has also claimed as a part of the value of the system the supervision provided by herself and her husband. The value of these services

---

1. George F. Schott, originally a party to this lawsuit, died testate. The estate, including all after-discovered property belonging to decedent, has been distributed to plaintiff as her sole and separate property.

2. For the purposes of this lawsuit, as it relates to Shangri-La Estates, plaintiff claims only the reasonable value of the water lines pertaining to blocks 7 and 8.

is alleged to be $10,000. However, the testimony of the general contractor, Mr. Freiday, would indicate a value for these services in an amount far less than that claimed by plaintiff. The conflict is so substantial as to make any valuation by the Court a matter of pure speculation. For this reason the Court declines to value these services.

## CONCLUSIONS OF LAW

1. Federal courts in diversity cases involving non-federal matters must follow state law in matters of substantive rights. Erie R. Co. v. Tomkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). [F]or the purposes of diversity jurisdiction a federal court is 'in effect, only another court of the state.' " Angel v. Bullington, 330 U.S. 183, 67 S.Ct. 657, 91 L.Ed. 832 (1947). See also Sherrill v. McShan, 356 F.2d 607 (9th Cir. 1966).

2. A federal district court in Arizona applies the substantive law of Arizona for a cause of action arising within Arizona. See Peterson v. Mountain States Tel. & Tel. Co., 349 F.2d 934 (9th Cir. 1965).

3. The controlling Arizona law in this matter is found in Paar v. City of Prescott, 59 Ariz. 497, 130 P.2d 40 (1942). In Paar the Arizona Supreme Court held that when a municipal corporation, acting in its proprietary capacity, makes use of a private water system constructed by another, it is liable for the reasonable value of the use of that property, "notwithstanding the fact that there had been no express contract between the parties, either oral or written, in regard to the use of the property or the amount paid therefor." 130 P.2d at 42.

The Court's statement of the facts in Paar relates a situation similar to the one before this Court.

Since the decision in Paar, supra, the Arizona Supreme Court has not had occasion to again express its opinion on the law in this area. Furthermore, the decision in Paar has not been subsequently explained, distinguished or clouded by dicta. In fact, the case has been cited as authority only once since it was decided and that occurred in an unrelated context. The legislature of the State of Arizona has not acted in a manner which undermines the force of that decision.

Defendant argues that Paar is not applicable to the situation herein. Defendant attempts to distinguish Parr from this cause because the court in Paar found that the plaintiff therein "owned" a private water system whereas the plaintiff herein does not "own" the water lines which were laid in streets dedicated to the public. Although the Arizona Supreme Court referred to the water system as "belonging" to Paar and being his "property", there is no indication from the statement of facts in the opinion that the water pipes therein were not also laid in the publicly dedicated streets of the subdivision. Moreover, the statement of facts in Paar taken as a whole would indicate that the Arizona Supreme Court was not grounding its decision on the illusive concept of "ownership" of the water pipes or the realty in which they were laid, but rather the unjust enrichment resulting when a municipal corporation benefits without giving compensation from another's construction of a water system outside of the city limits.

Defendant implies that the fact that Paar has been infrequently cited as authority since the date of decision renders it defective as authority for plaintiff's position herein. However, when a federal court in a diversity case is confronted with an older decision of the highest court of the state which has not been impaired by subsequent judicial rulings or legislative activity, it is bound to adhere to that decision. Bernhardt v. Polygraphic Company of America, 350 U.S. 198, 76 S.Ct. 273, 100 L.Ed. 199 (1956). It is not the function of this Court to anticipate what the Supreme Court of Arizona may do the next time it has the opportunity to rule on a case like Paar or the one herein. Barlow v. DeVilbiss Co., 214 F.Supp. 540,

543 (E.D.Wis.1963). A federal district court is bound by the applicable state law even though there may be persuasive reasons for change. Seguros Tepeyac, S.A. Compania Mexicana de Seguros Generales v. Jernigan, 410 F.2d 718 (5th Cir. 1969); Bannowsky v. Krauser, 294 F.Supp. 1204 (D.Colo.1969).

Defendant further contends that this is an improper case in which to apply *Paar* because this is really a matter of "officious conferring of benefit." This contention is without any support in the evidence.

This Court is cognizant of the fact that in the usual subdivision development, wherein the water lines are installed by the developer and not the municipality, the developer will ordinarily recover his expenses by prorating the same over the lots affected, thereby raising the selling price of each lot. However, the evidence in this case indicated that plaintiff did not do that. Therefore, this Court is bound by the decision in Paar v. City of Prescott, *supra*.

4. In *Paar*, the Court allowed as damages the reasonable value of the use of the property by defendant. The evidence herein concerning this measure of damages, however, is insufficient. Moreover, plaintiff has requested only the reasonable value of the water system as completed plus an amount to cover the supervisory work performed by plaintiff and her late husband. The uncontradicted evidence is that the out-of-pocket costs to plaintiff and her husband amounted to $21,706.33. These costs may be recovered. However, the claim for damages attributable to supervisory efforts will be denied because there is an insufficient basis in the record to guide the Court in achieving a valuation that even approaches a semblance of an educated guess.

### JUDGMENT

It is ordered, adjudged and decreed that plaintiff have judgment against defendants in the amount of $21,706.33, together with cost of suit incurred.