

## XI

 ## XII

## XIII

Harold E. Whitney (argued), of Minne & Sorenson, Phoenix, Ariz., O. E. Everett, City Atty., Kingman, Ariz., for defendants-appellants.

Robert John Walton (argued), Phoenix, Ariz., for plaintiff-appellee.

Before WEICK,[*] HAMLEY and MERRILL, Circuit Judges.

MERRILL, Circuit Judge:

The question presented in this diversity case is whether, under Arizona law, a subdivider of property adjacent to a city who installs a water system in satisfaction of a state-imposed condition to the right to sell subdivision lots, which system is then connected to the city system, can thereafter recover from the city the cost of such installation. The district Court held that she could. Its findings of fact, conclusions of law and judgment are reported, Schott v. City of Kingman, 317 F.Supp. 427 (D.Ariz.1970). We reverse.

**Anna Mae SCHOTT, Plaintiff-Appellee,**

v.

**CITY OF KINGMAN, an incorporated Arizona municipality, et al., Defendants-Appellants.**

**No. 26862.**

United States Court of Appeals, Ninth Circuit.

May 25, 1972.

Rehearing Denied June 27, 1972.

---

[*] Honorable Paul C. Weick, United States Circuit Judge for the Sixth Judicial Circuit, sitting by designation.

From 1962 through 1965 appellee and her late husband developed two subdivisions outside the city limits of Kingman, Arizona, in the course of which water distribution lines were installed under the subdivision streets.[1] The District Court found:

"At the time of installation of the water lines there was no approved water supply other than that afforded by the City of Kingman. Furthermore, the State of Arizona required that water must be made available before plaintiff's lots could be sold. Plaintiff and her husband were aware of this requirement.

The water lines were laid in the streets and followed minimum specifications required by the City of Kingman in accordance with the standards of the State Health Department. * * *

Subsequent to installation of the water lines, the system was turned over to the City of Kingman for maintenance. * * *

Subsequent to turning the water lines over to the City of Kingman for maintenance, a written demand for compensation was made by plaintiff and refused by defendant City of Kingman." 317 F.Supp. at 428.

Arizona law contains the usual requirements for city and county approval of subdivisions adjacent to city limits and the recording of approved plats.

Ariz.Rev.Stat. §§ 9–474—9–479 (West 1956), as amended by 1958 Ariz.Laws Ch. 81, § 1. Further, it provides:

"Upon the filing of the plat or map, the fee of all streets * * * and other parcels of ground reserved therein to the use of the public, shall vest in the public." Ariz.Rev.Stat. § 9–477, subsec. C.

That the appellee took into consideration such state-required costs of subdivision in fixing the price of the lots seems apparent, although her testimony was far from precise.[2] If she did not she was indeed ingenuous. But whether she did or not, the fact is that by dedication to the public she parted with all title to the streets and the underlying water mains and having, under compulsion of state law, dedicated them to the public in order to be able to sell subdivision lots, she cannot now recover their cost at public expense after having enjoyed the benefits and profits of dedication.

The District Court, however, felt that state law as announced in Paar v. City of Prescott, 59 Ariz. 497, 130 P.2d 40 (1942), compelled a contrary result. We disagree.

That case involved use by the City of Prescott, Arizona, of a water-supply system installed by Paar, the developer, in a proposed addition to the city. The court allowed recovery of the value of use of the system on the theory of unjust enrichment.

1. These water lines were not extended to individual lots. Purchasers of those lots were expected to pay the cost of attaching private lines to the water mains.

2. "Q. When you sold these lots after you put the water main in, you expected to get some of your expenses back, didn't you?
A. Well, you had to get a little— what I mean, when you buy a piece of property, it is so much, and when you put in all the water mains and the streets and everything like that, you set a price."
The District Court found that the price of the lots had not been "increased" to absorb the cost of the water lines. This, however, was based on testimony with reference to specific raises in the price of the lots that occurred during the course of the sales program. Those raises had nothing to do with the water mains but were due to increases in value of the lots. The water mains were put in prior to the setting of the initial prices for lots.
Also instructive is the testimony of a Mr. Freiday, who performed the installation of the water system: "* * * it was brought up that [the subdividers] were going to have to get a certain amount of money out of lots * * * due to the cost of the water and grading of the streets." This was promptly contradicted by appellee's testimony only to the extent that she claimed to know of no conversation concerning "changes" or "increases" of lot prices.

The case is indeed an anomaly. From the opinion we do not know how, under the state law applicable in 1927 (the date of the installation), Paar managed to avoid dedication to the public. All we know is that somehow he did and that he retained title to the water system which the city then used.[3]

Never once in the opinion is the question of dedication mentioned. But the description of the water system and the actions taken with reference to it are inconsistent with dedication.[4] Throughout the opinion the system is characterized as a "private water system." It was installed by William Paar after portions of the addition had been sold and when it became apparent that existing water supplies for the addition were insufficient. Connection of the private system with the city supply system was made at the city limits. The following year "Paar, the then owner of the private system, applied to defendant requesting that the city purchase his water system, and this matter was discussed from time to time but no formal action was ever taken thereon. The system was thereafter sold by William Paar to his son [the present plaintiff]." 59 Ariz. at 499–500, 130 P.2d at 41. The nature of the judgment also is revealing. It is not based on the city's acquisition of the water system, but rather recognizes that the plaintiff still retained ownership of it. The city was required to pay for the use of it at the rate of $750 a year for the three years preceding commencement of the action—the period of time not barred by limitations.

Thus in our view the case stands for no more than this: When a city in delivering water at a price makes use of privately owned property it must make restitution for the value of that use. We have concluded that this principle is not applicable in the case before us.

Judgment reversed.

---

3. *Compare* Moeur v. City of Tempe, 3 Ariz.App. 196, 197, 412 P.2d 878, 879 (1966) (plat recorded with statement reserving to land company the right to laying and maintaining water mains).

4. *Compare* City of Scottsdale v. Mocho, 8 Ariz.App. 146, 151–152, 444 P.2d 437, 442–443 (1968); City of Flagstaff v. Babbitt, 8 Ariz.App. 123, 133, 443 P.2d 938, 948 (1968).